ETHEL BELLAMY, BY HER NEXT FRIEND, EMPLOYEE, v. GREAT FALLS MANUFACTURING COMPANY, EMPLOYER, AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, CARRIER.

(Filed 29 April, 1931.)

1. **Master and Servant F b—Evidence that injury arose out of accident in course of employment held sufficient.**

Where the evidence tends to show that the employees in the defendant's spinning department were required to remain in the mill for a half hour after work therein had stopped, and that one of the employees therein was injured during this time in an accident while riding in an elevator to another floor with a friend for the purpose of seeing about getting her friend a job in the mill, and that it was the custom of the employees to use the elevator: *Held*, under a liberal construction of the Workmen's Compensation Act, the accident was in the course of the employment and the employee was entitled to compensation.

2. **Master and Servant F a—Workmen's Compensation Act is to be liberally construed and evidence taken in light favorable to claimant.**

The North Carolina Workmen's Act is to be liberally construed to effectuate its purpose to provide compensation for employees injured in

accidents arising out of and in the course of their employment, and the evidence in a proceeding thereunder is to be considered in the light most favorable to the claimant and he is entitled to every reasonable intendment thereof and every reasonable inference therefrom.

APPEAL by defendants from *McElroy, J.,* at December Special Term, 1930, of RICHMOND. Affirmed.

*W. R. Jones for plaintiff.*
*Smith & Joyner for defendants.*

CLARKSON, J. This is an action brought by plaintiff against the defendants under the North Carolina Workmen's Compensation Act, Public Laws of North Carolina 1929, ch. 120. Plaintiff contends that under section 2(f) of said act, she sustained injury "by accident arising out of and in the course of the employment." This was denied by defendants. T. A. Wilson, Commissioner, found the facts and his conclusion of law was to the effect that the plaintiff was not entitled to award. On appeal by plaintiff this was sustained by the full Commission. Plaintiff then appealed to the Superior Court. The court below, upon the hearing, reversed the Commission: "The court being of the opinion from the facts appearing in the findings of fact by the Commission that the injury of plaintiff arose out of and in the course of her employment in the meaning of the law, and being of the opinion that the plaintiff is entitled to compensation for her injury. It is, therefore, considered and adjudged that the judgment of the Commission be, and the same is hereby reversed, and this proceeding is remanded to the Industrial Commission to make allowance to the plaintiff as provided by law."

The testimony of plaintiff was to the effect that she was working in defendant's mill in the spinning department, and was just beginning to learn how to do the work, and was working five days a week for 18 cents a day. On April 5, 1930, she was injured. The spinning department had stopped work at 11 o'clock a.m., but the employees were not allowed to leave the building until 11:30 o'clock a.m., and during the time she was required to stay in the mill she was injured. Plaintiff was working on the fifth floor and between 11 and 11:30 o'clock a.m., she rode down to the first floor on the elevator to the weaving room, with Reba Henry to see about getting her a job. In returning on the elevator from the first to the fourth floor, where a gangway led to the outside, she attempted to get off at the fourth floor, Frank Dunlap, who was running the elevator at the time of the injury, pulled her back and she was caught between the elevator and the floor above and seriously injured.

Plaintiff's mother testified: "I am familiar with the workings of the mill. Anybody that wants to, has the privilege of using the elevator.

I work there and have been there five years. It is the custom for any-body to use the elevator that wants to. Anybody who wants to can run it. That has been the custom since I have been there. . . . She has not been able to work since the injury. She had a hemorrhage of the kidney several times. The first time was the night after the accident and then there was another about a week from then that lasted three days. There is a pretty bad dent across her thigh and she is bruised about the body. It seemed that the worst hurt was in the right side. Sometimes she suffered so that it took two or three of us to hold her on the bed."

It was in evidence that there were stairs from the first to the top or fifth floor.

It is the well settled rule of practice in this jurisdiction, in cases of nonsuit and cases of this kind, that the evidence which makes for the plaintiff's claim and which tends to support her cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and she is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

In L. R. A., 1916-A, at p. 237, we find: "An employee in a mill is not outside the scope of her employment in going from an upstairs room, where her work had run out, to a room down stairs, where she had been told by the overseer that there was work for her to do. And an employee by the week in a shop does not go outside of the employ-ment merely because she leaves the shop for the purpose of getting a lunch. (Note 99) in *Sundine's case* (1914), 218 Mass., 1, *post* 318, 105 N. E., 433, it was held that a girl employed in a shop who was employed by the week, does not go outside of the employment merely because she leaves the shop for lunch. The Court said: 'The decisions upon similar questions under the English act are to same effect (citing authorities). Where one went on the ground at the dinner hour, though not paid for, was yet included in the time of employment (citing au-thorities). That a temporary absence of permission, though apparently of longer duration than would have been likely in the case before us, did not suspend the employment, and that, an injury occurring during such temporary absence arose out of and in the course of the employ-ment,' " citing numerous other authorities. *Ryerson v. A. E. Bounty Co.* (Conn.), 140 Atlantic Rep., 728; *Holmes' case* (Mass.), 166 N. E. Rep., 827; *Parrish v. Armour Co., ante,* 654.

"Affirming judgment for plaintiff, the Court held that a workman, if during his working hours there are intervals of leisure, may, during such intervals within reasonable limits, move from place to place on the premises of the employer and visit with fellow employees, if he

refrains from exposing himself voluntarily to known or visible hazards or dangers; and that the injury of deceased, under a liberal construction of the act, occurred in the course of his employment. *Twin Peaks Canning Co. v. Industrial Commission* (Utah), 196 Pac., 853 (1921)." 20 Negligence and Compensation Cases (Anno.), p. 557.

"Plaintiff was employed by the defendant insurance company, working on the eleventh floor of a building owned by the defendant and occupied by it and its tenants. It furnished elevator service only up to the eleventh floor, and on the twelfth floor served lunch free to its employees, who were allowed a free period of 35 minutes, during which they could use the free lunch service, or go outside the building as they chose. Plaintiff, having gone to the twelfth floor for lunch, returned to her desk on the eleventh floor, secured her pocketbook and entered the elevator to be taken to the ground floor, intending, it appeared, to leave the building on a personal errand during the remainder of her free period. While leaving the elevator she was injured, and in this suit to recover damages she ascribed her injury to the negligence of the operator of the car. In reversing a judgment for damages, the Court held that it was the duty of the defendant, as employer, to furnish plaintiff and other employees with an exit from their place of work to the street, available at any time when their services were not required, and hence the plaintiff was still in the course of her employment at the time of the accident, regardless of whether her employment were deemed to continue through the lunch hour, and regardless of her purpose in leaving the building. It followed, the Court held, that the case was governed by the Workmen's Compensation Act, and there could be no recovery at law. *Martin v. Metropolitan Life Ins. Co.,* 197 N. Y. App. Div., 382, 189 N. Y. Supp., 467 (1921)." 21 Negligence Compensation Cases (Anno.), p. 644, note 2.

In *Nor. Car. R. R. Co. v. Zachary,* 232 U. S. Rep., at p. 260, we find: "Again, it is said that because deceased had left his engine and was going to his boarding-house, he was engaged upon a personal errand, and not upon the carrier's business. Assuming (what is not clear) that the evidence fairly tended to indicate the boarding-house as his destination, it nevertheless also appears that deceased was shortly to depart upon his run, having just prepared his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding-house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine. See *Missouri, Kansas & Texas Ry. Co. v. United States,* 231 U. S., 112, 119." 156 N. C., 496; *New York Cent. R. Co. v. Marcone, Admr.,* 281 U. S. Rep., 345.

Plaintiff was compelled to stay in the mill until 11:30 a.m. She was "on duty" and was injured before the time expired for her to go off duty. The mission she went on, while she was "on duty" was in the mill, was a temporary purpose, and not such a departure from the employer's business that we could say from a liberal construction of the act that it was not in the course of the employment. In fact, she went with a friend to get her employment in the mill, and in doing so did not leave the mill. Under the facts and circumstances of the case and the conduct of plaintiff, what she did was too casual to bar a recovery. The judgment of the court below is

Affirmed.