RALPH E. LEE, JR. v. F. M. HENDERSON & ASSOCIATES
AND IOWA MUTUAL INSURANCE COMPANY

No. 7310IC95

(Filed 14 March 1973)

1. **Master and Servant § 56— injury arising out of and in course of employment**

   A claimant before the Industrial Commission must prove that the injury sustained was the result of an accident arising out of and in in the course of employment, that is, that the injury was a natural and probable consequence or incident of the employment and a natural result of one of its risks.

2. **Master and Servant § 56— hand injury — use of power saw — injury in course of employment**

   Injury to plaintiff salesman's hand sustained while he was operating a power saw in defendant employer's shop arose out of and in the course of his employment where plaintiff was working in the shop at the specific instruction of his employer but without any specific assignment, plaintiff had previously obtained permission to work on a doghouse in the shop during working hours when he had nothing else to do, plaintiff was allowed to use scrap material of the employer to build the doghouse and plaintiff was operating the saw at the time of the injury to cut wood for the doghouse.

APPEAL by claimant from an opinion of the North Carolina Industrial Commission filed 11 September 1972.

The evidence before the Industrial Commission tended, in pertinent part, to show the following.

The claimant, Ralph E. Lee, Jr., was hired as a salesman by F. M. Henderson & Associates, a manufacturer and installer of cabinet units, and began work in August of 1970. As was the custom with all new salesmen, he was first assigned to work in the workshop and warehouse as part of a training program.

This experience was necessary in order to enable salesmen for the firm to design cabinet layouts for their customers. He worked full time in the shop for about two and a half weeks actually cutting lumber and building cabinets. During this time, claimant obtained permission from Carl Smith, superintendent in charge of the shop, warehouse, and Raleigh office, to design and construct a doghouse during working hours as long as he received no other specific assignment. Mr. Smith assisted in the project and the same tools, materials and techniques were employed in the execution of the doghouse project as were used in drawing and constructing cabinets. Before the doghouse was completed, claimant's schedule was altered to riding with a salesman part-time and working in the shop part-time. His duties as one of the firm's three salesmen included designing cabinet layouts, helping to deliver the product, working in the shop, unloading cabinets from time-to-time and rotating Saturday duty assignments with the other salesmen so as to work at the office and shop every third Saturday. At the request of his employer, claimant reported to work on Saturday, 26 September 1970 at about 7:45 a.m. While working in the office, he received a telephone call from F. M. Henderson (his employer) who asked claimant to "open the warehouse and put a sign on the door and do whatever [he] saw needed to be done. He did not give [Lee] any specific assignments to perform in the warehouse." Claimant opened the warehouse, used a saw to cut wood for some cabinet sink fronts and generally cleaned up the area. Mr. Norman Altman, shop foreman, arrived and he and Lee unloaded some cabinets from Altman's truck. At claimant's request, Mr. Altman adjusted the blade setting on a power table saw. Since it was his day off, Mr. Altman left the shop and had just started to drive off when he heard claimant holler in distress. He had begun cutting wood which could be used either in cabinet construction or in the doghouse and, in so doing, severed his first, or index finger, and the second finger on his left hand.

The Industrial Commission made the following pertinent findings of fact, among others.

The "plaintiff's training period [in the shop] was shorter than average [thirty days] due to the fact that he had had some experience with woodworking machinery while in the Armed Forces." . . . . "He obtained permission from Smith [manager of the Raleigh office] to work on [a] doghouse in

the employer's shop during working hours when he had nothing else to do and to use 'scrap' material to build the doghouse. In fact, Smith helped plaintiff soon after beginning this employment to design the doghouse on company time, using company materials. When plaintiff had finished his training program, the doghouse was only partially completed and was left in the shop." . . . . "One of the saws [in the employer's shop] was a table-mounted electric saw with the blades protruding from a plate in the table which could be raised or lowered to regulate the depth of the cut. The safety guard on this particular table saw was missing at the time complained of." . . . . "[At this same time] the employer's shop and warehouse was one unit and located under one roof." . . . . "On Saturday, September 26, 1970 plaintiff began work for the defendant employer in the shop and warehouse, this being his Saturday to work. For the first hour, he worked in the office and at approximately 8:45 a.m., the owner of the business, F. M. Henderson, instructed plaintiff by telephone to open the warehouse and shop and do whatever he saw needed to be done there. Plaintiff then went into the warehouse and shop, swept the floors, cut some cabinet parts, and then helped the shop foreman, Norman Altman, unload a load of cabinets. He then asked Altman to reset the saw so that it could be used to rip some three-eighths inch plywood scrap. After Altman reset the saw, he left, since he (Altman) was not required to work on this Saturday. Plaintiff then started ripping some three-eights inch plywood scrap which he was intending to use in the completion of his doghouse. While ripping the plywood with the table saw above-described, his left hand became caught in the saw, resulting in loss by amputation of the first and second fingers of the left hand." . . . . "This was the first Saturday plaintiff had worked on his rotation [with the other salesmen] since becoming a full-time salesman." . . . . "It was not unusual for plaintiff and his co-workers to use the defendant employer's equipment for personal projects when the employees were not busy with company work. a (sic) practice or custom had been established by the employer, allowing the employees to use such equipment. However, at the time complained of, plaintiff was performing an act personal to himself; constructing a doghouse for his own use, and this activity in no way enhanced the business of the defendant employer. At the time complained of, plaintiff did not sustain an injury by accident arising out of and in the course of his employment."

Under the heading "COMMENT" interposed between its findings of fact and conclusion of law, the Commission makes, among others, the following observation: "Our Supreme Court has held that where an employee at the time of his injury is performing acts for his own benefit not connected with his employment, the injury does not arise out of the employment. This is true even if the acts are performed with the consent of the employer and the employee is on the payroll at the time. BELL v. DEWEY BROTHERS, INC., 236 N.C. 280; JONES v. MYRTLE DESK CO., 264 N.C. 401."

The Commission concluded as a matter of law that plaintiff did not sustain an injury by accident arising out of and in the course of his employment on 26 September 1970. The Commission's conclusions of law also state: "2. Plaintiff's accident occurred while performing an act personal to himself which did not further the employer's business. The claim must, therefore, fail. BELL v. DEWEY BROTHERS, INC., *supra;* JONES v. MYRTLE DESK, *supra*." An order was entered denying plaintiff's claim.

*Manning, Fulton & Skinner by W. Gerald Thornton for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay by C. Woodrow Teague and Robert W. Sumner for defendant appellees.*

VAUGHN, Judge.

[1] A claimant before the Industrial Commission must prove that the injury sustained was the result of an accident arising out of and in the course of employment. The phrase "arising out of the employment" refers to the origin or cause of the accident and the phrase "in the course of the employment" refers to the time, place and circumstances under which the injury occurred. *Bass v. Mecklenburg County,* 258 N.C. 226, 128 S.E. 2d 570. In order for an injury to arise out of the employment, it must be a natural and probable consequence or incident of the employment and a natural result of one of its risks. *Perry v. Bakeries Co.,* 262 N.C. 272, 136 S.E. 2d 643. Whether the injury arises out of or in the course of employment is a mixed question of law and fact. *Bryan v. Church,* 267 N.C. 111, 147 S.E. 2d 633; *Enroughty v. Industries, Inc.,* 13 N.C. App. 400, 185 S.E. 2d 597. The appellate court is bound by the nonjurisdictional findings of the Industrial Commission, if there is com-

petent evidence to support such findings, but the appellate court is not bound by the conclusions of law made by the Commission. *Enroughty v. Industries, Inc., supra.*

[2] The Commission found that the three salesmen rotated their Saturday duties so that only one of them would be working in the shop on any given Saturday and each salesman worked his turn, it being plaintiff's turn on the date in question. Further, the findings show that plaintiff, at the request of the employer, went from the office to the shop and did whatever he saw that there was to be done without having been given any specific assignment. He also had previously obtained permission "to work on [the] doghouse in the employer's shop during working hours when he had nothing else to do and to use 'scrap' material to build the doghouse."

The Commission found that, at the time of the accident, claimant was a full-time salesman, that he had finished his training program and that he was performing an act personal to himself. These findings are not determinative of the issues.

Other findings of the Commission disclose that, whether called a "salesman" or trainee, at the time and place of the accident one of the duties of his employment was to operate a power saw and that he had operated the saw to cut cabinet parts on the morning of the accident. Certainly one of the risks incidental to employment as a power saw operator is that of getting cut. The finding by the Commission that the particular piece of wood being sawed was destined for a doghouse instead of a cabinet does not alter the fact that claimant was injured while exposed to a risk of his employment in the operation of a power saw. These facts distinguish the case on appeal from *Bell v. Dewey Brothers, Inc.,* 236 N.C. 280, 72 S.E. 2d 680, where a night watchman, without permission or express prohibition, was washing his private automobile on company time. The employee was standing on the rear bumper of the car; his trousers caught on a bumper guard; when he tried to step off the bumper the trousers remained caught on the bumper guard and the employee fell to the ground on his left hip. The duties of his employment were to make six regular rounds of the premises, punch six key stations in his time clock on each round, to turn off lights which might have been left burning, to inspect various electric motors which might be operating, and to maintain general surveillance of the em-

ployer's premises. The court held that falling off of an automobile bumper while washing his personal automobile (without being expressly permitted to do so) was not a risk incident to his employment as a nightwatchman and that there was no causal relationship between his employment as a watchman and the injury he sustained.

Nor do we consider as determinative the Commission finding that the use of the saw at the time of the accident to cut a board for claimant's doghouse "in no way furthered the employer's business." In *Stubblefield v. Construction Co.,* 277 N.C. 444, 177 S.E. 2d 882, an employee of an electrical contractor was standing near some conveyor belts in a brick plant. He had no duties in connection with the operation of the brick plant or the conveyor belts. While awaiting the arrival of his foreman, the employee proceeded to knock dust and pieces of brick from the rollers of a conveyor belt. As he did so, his hand became entangled, and he was pulled between the rollers and the belt and killed. Certainly the business of his employer, the electrical contractor, was not being furthered by an effort to clear a conveyor belt of the brick company. The Supreme Court held that there was a causal relationship between the accident and the employment. The employee was where he was supposed to be and was engaged in a duty required by his employment, namely, waiting for his foreman. In *Bellamy v. Manufacturing Co.,* 200 N.C. 676, 158 S.E. 246, the spinning department of a cotton mill, located on the fifth floor, stopped work at 11:00 a.m. but employees were not allowed to leave the building until 11:30 a.m. Between 11:00 and 11:30 a.m., claimant, an employee of the spinning department, left that department to go to the weaving room which was located on the first floor of the mill. Claimant's purpose in going to the weaving room was to inquire about getting a job for a friend. While returning, she was injured as she attempted to get off the elevator on the fourth floor. The accident was held to be compensable. The court held that she was "on duty" and was injured before the time expired for her to go off duty. The court held that her mission (which was obviously personal to herself) was not such a departure from the employer's business as to bar recovery.

In the present case all of the facts found by the Commission disclose that at the time of the accident the employee was where he was authorized to be at a time he was authorized to

Lee v. Henderson & Associates

be there and was engaged in an activity specifically authorized by his employer. It is distinguishable from *Jones v. Desk Company*, 264 N.C. 401, 141 S.E. 2d 632, which is cited by the Commission and appellee. In that case, in a per curiam opinion, the court affirmed the denial of compensation to an employee in a furniture plant who was injured while operating a shaping machine to make a picture frame for personal use. Unlike the present case, however, the employee was not engaged in an authorized activity. In *Jones*, before an employee could use cull and waste materials and do personal work on company time, the employee was required (1) to obtain permission from his foreman, (2) present the material to his supervisor for appraisal and (3) make payment for the price fixed for the material, if any. The injured employee had failed to obtain permission and had failed to have the cull material valued. The employee, therefore, had failed to obtain permission when permission was specifically required and was thus engaged in a specifically unauthorized activity. In the present case the claimant was engaged in an activity which had been specifically authorized by his employer.

Though not binding, several cases from other jurisdictions are of interest to us in our decision.

In *Maheux v. Cove-Craft, Inc.*, 103 N.H. 71, 164 A. 2d 574, an employee suffered permanent injury to his left eye while engaged in operating a table saw to manufacture a checkerboard for his own use. The accident took place during the employee's lunch hour and at his place of employment. The Commissioner of Labor denied compensation and was reversed by the Superior Court. In affirming that decision, the Supreme Court stated that the issue was determined by the question of whether the activity is reasonably expectable so as to be incident to the employment. Stress was laid upon the factors that the plaintiff was on the employer's premises, using the employer's machinery, electricity and stock in an enterprise never expressly forbidden to him and which was consistent with customary practices and impliedly sanctioned by the employee's immediate supervisor in charge.

The New Hampshire Commissioner of Labor also denied compensation to the survivors of an employee who worked as a boiler tender at a tanning plant and who was killed when he drove his automobile into his employer's carpentry shop during working hours, jacked the automobile up in order to work on a

broken torsion bar and had the auto fall on top of him. *Hanchett v. Brezner Tanning Company,* 107 N.H. 236, 221 A. 2d 246. The Superior Court reversed the Commissioner and the Supreme Court agreed and found several factors to be significant: the employer allowed employees to make such repairs; the employee had been an auto mechanic prior to his employment with the defendant company and the employer was interested in having all mechanics improve their skills as such; the work on the auto had not been forbidden; the employee was where he was supposed to be at a time when he was supposed to be there; the employee was not required to remain idle during slack periods of work; the activity engaged in was reasonably expectable so as to be an incident of the employment and thus, in essence, a part of it.

In a Georgia case, the rule has been stated that, "If an employee, while doing something in the interest of his employer, is simultaneously engaged in an act personally beneficial to himself, the service to the employer is not broken, and any injury received by him at that time as the result of the ordinary exposures of his employment, is an injury arising out of and in the course of his employment, and particularly so where the cause for the employee's engaging in such act personally beneficial to himself is the reasonable result of his employment." *Hartford Accident and Indemnity Co. v. Souther,* 110 Ga. App. 84, 137 S.E. 2d 705, 706.

In *Wamhoff v. Wagner Electric Corp.,* 354 Mo. 711, 190 S.W. 2d 915, 161 A.L.R. 1454, it was held that an injury to an employee in doing work for himself on his employer's time may entitle him to Workmen's Compensation benefits where there was substantial evidence, not only that the employer should have anticipated the activities of the employee and others doing personal work, but that the employer encouraged such activities, so long as they did not unduly encroach upon the employer's work, in order to give the employee useful experience. The employee in this case had electroplated both a work item and a toy for his child. He buffed the work item and then, while buffing the toy, the employee injured his hand in the buffing machine.

For the reasons stated we hold that the Commission's conclusion of law that claimant did not sustain an injury by accident arising out of and in the course of his employment is not supported by its findings of fact which are pertinent to this

appeal. The order from which claimant appealed is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges BROCK and GRAHAM concur.