PAULETTE L. GOLDSTON, WIFE OF BOYCE GOLDSTON, DECEASED, EMPLOYEE, PLAINTIFF v. GOLDSTON CONCRETE WORKS, IN-CORPORATED, EMPLOYER, AND THE HOME INDEMNITY COM-PANY, CARRIER, DEFENDANTS

No. 7519IC1050

(Filed 16 June 1976)

**Master and Servant § 56— workmen's compensation — cutting top off barrel with acetylene torch — accident within scope of employment**

Evidence was sufficient to support the Industrial Commission's conclusion that deceased's death resulted from an accident which arose out of and in the course of his employment where such evidence tended to show that the deceased employee was on his employer's premises at a time when he could reasonably be expected to be there, he was using his employer's acetylene torch to cut the top from a barrel, an activity in which he normally engaged in the furtherance of the employer's business, and he was killed by accident while engaged in that activity.

APPEAL by defendants from an opinion and award of the North Carolina Industrial Commission filed 15 September 1975. Heard in the Court of Appeals 4 May 1976.

The employee, Boyce Goldston, was accidentally killed by an explosion on 8 July 1974. The only question presented is whether the accident arose out of and in the course of the employment.

A deputy commissioner made the following findings of fact.

"1. On July 8, 1974, the deceased, Boyce Goldston, was employed by the defendant employer Goldston Concrete Works, Inc. (hereinafter, Concrete Works). The Concrete Works had been incorporated in 1971 and continued operation on the premises where the business was operated by deceased's father prior to the father's death. The shareholders of the Concrete Works were the deceased's mother, the deceased, his three brothers and his sister. The mother was the president, the four brothers were vice presidents and the sister was secretary.

Each of the four sons, Joe, Larry, Boyce and Carnell were employed by the Concrete Works and had more or less equal responsibility although Carnell kept time records of hours on the job and certain of the brothers by practice assumed primary responsibility for certain tasks.

2. The Concrete Works primary function was working with concrete—making and installing septic tanks, driveways, etc. The corporation was authorized by its Articles of Incorporation, in very broad language, to maintain and repair dwelling houses, to 'perform personal services of any nature,' and, along with the usual catch-all 'to engage in any other lawful activity' including but not limited to '. . . constructing, producing, repairing and servicing any other structures. . . .'

The premises of the Concrete Works were enclosed within a fence. There was a small building on the premises in which certain equipment and records were kept. Each of the brothers had a key to the lock on the gate and the first one in would unlock the gate and the last one out would close and lock the gate. Each of the brothers would daily turn in their hours to Carnell and he, in turn, would provide the information to their sister, Mrs. Shirley Goldston White, who would total the hours, multiply it by the hourly rate and issue checks.

The four brothers worked long hours and occasionally seven days a week as necessary.

3. Mrs. White, and three brothers, Larry, Carnell and Boyce lived across the street from the Concrete Works. Their mother's house was just down the road and their mother's farm was just on the other side of the Concrete Works. Their mother also owned some tenant houses. The brothers did necessary work at all of these places but there is no evidence that their hours of employment for the Concrete Works included this time. The Concrete Works had installed septic tanks at some of these places.

4. A mobile home park (hereinafter 'park') was located about a quarter of a mile from the Concrete Works. The land on which the park was located was owned by the deceased's mother. Lots within the park were for rental and several had been rented prior to the death of Boyce Goldston. The park was in operation only a few months at the time of his death. The park had no separate office and its mail was received at the Concrete Works. Mrs. White also kept the books and records of the park. It was incorporated as Goldston Mobile Home Park, Inc. on August

24, 1974 and stock was issued at that time to the three surviving brothers, Mrs. White and their mother.

5. Prior to deceased's death, upkeep of the park was part of his special responsibilities. He collected the rental money from the park and did upkeep and maintenance work alone or with one of his brothers. He was paid by the Concrete Works for his time in this. Prior to July 8, 1974 the deceased and his brother, Larry, had installed septic tanks in all of the lots of the park. The Concrete Works has not been paid for this work although this is considered by Mrs. White, secretary of both corporations an outstanding bill of the park. The deceased and other Concrete Works employees dug the well for the park and ran pipe from the well to the lots. There is no evidence as to whether this work is considered an outstanding bill of the park. A connection for electricity was installed by a contractor and billed to the park; only part of this bill has been paid.

Prior to deceased's death, the park did not have a separate bank account although Mrs. White kept the records of money separate from the Concrete Works. Receipts from the park have evidently not been sufficient to meet expenses.

6. On July 8, 1974 the deceased, dressed in his work clothes, had been working for the Concrete Works. Shortly before his death, the deceased stopped by his mother's house to give her a check in payment for a pumping job just completed on a septic tank. The deceased's mother next saw him as she rode by the Concrete Works with her son, Larry, on the way to her farm. The deceased was still dressed in his work clothes and was within the fence of the Concrete Works with one Eddie Williams, a tenant of the park.

7. On July 8, 1974 at approximately 6:30 p.m. the deceased was on the premises of the Concrete Works with Eddie Williams. Williams had been living in the trailer park for several months and had asked the deceased previously to cut the top off a barrel so Williams could have a trash barrel at the park. The barrel had been on the Concrete Works premises for a while. Williams took it back to his mobile home and, on this day had taken it back to the Concrete Works so the deceased could cut off the top.

8. The deceased had cut the top off oil drum barrels acquired by the Concrete Works when the oil was gone to provide trash barrels for the Concrete Works.

Unfortunately, none of the witnesses knew of the deceased's practices—if any—regarding trash barrels at the park but Williams clearly considered that he was entitled to this service as part of the maintenance of the park.

This particular barrel, however was acquired by Williams and had a residue of gasoline in it. As the deceased applied the acetylene torch belonging to the Concrete Works to the barrel, it exploded causing his death.

9. The deceased's widow, Paulette Goldston, and their two minor children, Tyrone and Boyce, Jr., are entitled to compensation due, if any."

The deputy commissioner then concluded that the accident arose out of and in the course and scope of deceased's employment with defendant employer. An award was entered in plaintiff's favor.

On appeal, the full Commission made the following additional findings and conclusions:

" '10. At the time Boyce Goldston was using the acetylene torch on the barrel in question he had reasonable grounds to believe that to perform this service would be beneficial to his employer's interest, was incidental to his employment and would advance his employer's work. His injury by accident on the occasion complained of, therefore, arose out of and in the course of his employment.'

The Full Commission is of the view that at the time complained of the deceased employee was engaged in an activity in furtherance of his employer's interest and that said work was incidental to his employment and advanced his employer's work. Under these conditions, the tests for compensability are met."

The award of the Deputy Commissioner was affirmed with one commissioner dissenting.

Defendants appealed.

*Turner, Rollins and Rollins, by Clyde T. Rollins, for plaintiff appellee.*

*Hedrick, McKnight, Parham, Helms, Kellam, Feerick & Connelly, by Philip R. Hedrick and J. A. Gardner III, for defendant appellant.*

VAUGHN, Judge.

To be compensable under the Workmen's Compensation Act an injury must be one that arises out of and in the course of the employment.

> "The words 'out of' refer to the origin or cause of the accident and the words 'in the course of' to the time, place and circumstances under which it occurred . . . [t]here must be some causal relation between the employment and the injury; but if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is one which ought to have been foreseen or expected. . . .
>
>      \*      \*      \*
>
> An accident arising 'in the course of' the employment is one which occurs while 'the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing' . . . . " *Conrad v. Foundry Company,* 198 N.C. 723, 726, 727, 153 S.E. 266, 269.

Whether an injury by accident arises out of and in the course of the employment is a mixed question of law and a fact. *Hardy v. Small,* 246 N.C. 581, 99 S.E. 2d 862. The question before us is whether in any reasonable view of the evidence it is sufficient to support the critical findings necessary to permit an award of compensation. *Keller v. Wiring Co.,* 259 N.C. 222, 130 S.E. 2d 342. Whether compensation is recoverable depends largely upon the facts of each case as matters of fact and conclusions of law, and general definitions are unsatisfactory. *Harden v. Furniture Co.,* 199 N.C. 733, 155 S.E. 728.

We do not elect to review defendant's exception to the findings of fact. It is our view that, insofar as they are material to the critical issue, the findings of the Commission represent legitimate inferences that can be drawn from the evidence when it is considered in the light most favorable to plaintiff.

Defendant, for instance, excepts to the Commission's finding that the trailer park was not incorporated until the corporate stock was issued which was after the accident. Defendant contends that the incorporation was completed prior to the accident when the articles of incorporation were certified. We do not consider this finding critical. In either event, the evidence permits the inference that defendant Concrete Works, through the deceased and employees, performed certain services for the trailer park.

In short, the evidence, when considered in the light most favorable to plaintiff, shows the following. The employee was on his employer's premises at a time when he could reasonably be expected to be there. He was using his employer's acetylene torch to cut the top from a barrel, an activity in which he normally engaged in the furtherance of the employer's business. He was killed by accident while engaged in that activity. If the particular barrel on which he was working had been destined (as were the ones he had previously cut) for use at the Concrete Works, there would be no doubt about his having been killed when exposed to risk of his employment. That the barrel was to be used by a tenant at the trailer park, does not, under the circumstances of this case, alter the result. *Lee v. Henderson and Associates,* 17 N.C. App. 475, 195 S.E. 2d 48; 284 N.C. 126, 200 S.E. 2d 32.

The award of the Industrial Commission is affirmed.

Affirmed.

Judges BRITT and ARNOLD concur.