The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except for the modification of Finding of Fact No. 6 and Conclusion of Law Nos. 1 and 2 and the additions of Award No. 2 and the Order.
*********************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and an employment relationship existed between the parties on May 19, 1994.
2. Bituminous Insurance Company was the insurance carrier on the risk.
3. The plaintiff's average weekly wage was $550.00 which yields a compensation rate of $366.68.
4. The parties stipulated ten pages of medical reports into evidence.
5. The issues for determination are:
 a. Did plaintiff sustain an injury by accident arising out of and in the course of his employment on May 19, 1994, and if so, to what benefits is he entitled? and,
 b. Should defendants' defenses be barred due to their failure to comply with Commission Rule 603?
***************
The Full Commission adopts in part and modifies in part the findings of fact by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. On May 19, 1994, the plaintiff was a 49 year old male with a ninth grade education who had been employed for 22 years by defendant-employer as a pattern maker and carver.
2. Defendant-employer Piedmont Carving was a corporation owned by plaintiff's older brother Jimmy Jones. Plaintiff's younger brother Michael Jones was the general manager for defendant-employer.
3. On May 19, 1994, at approximately 3:30 p.m., Jimmy Jones requested that plaintiff stay late to complete a pattern which was to be used the next morning. Due to Mr. Jones' tone and manner of requesting the work, he and the plaintiff argued over plaintiff's staying late.
4. The plaintiff did not tell Jimmy Jones that he would stay late, past his normal end of shift at 4:00 p.m. to complete the pattern as requested. However, the plaintiff intended to do as requested.
5. A co-worker was completing work on roughing out the pattern, which plaintiff would then use to complete the pattern to be machined. As plaintiff was waiting for the roughed-out pattern, he began woodworking to make a curtain rod for his personal use.
6. Other employees of defendant-employer used equipment during slow times to make personal items. Even though the defendant-employer maintained a written company handbook which purported to prohibit personal use of company equipment, the greater weight of the evidence suggests that this provision was not enforced despite the knowledge of the owner and the general manager that employees including the plaintiff used the equipment for working on personal items. Even Jimmy Jones, the owner and an employee of defendant corporation used corporation equipment to work on personal items during work time. Jimmy Jones also knew that his son, his brother Michael who was the plant manager and plaintiff used the equipment to work on personal items during working hours. Based on the greater weight of the evidence, plaintiff was permitted to work on personal items during working hours when he had some free time. At the time of his injury plaintiff was engaged in an authorized activity while waiting to do work requested by his employer. Plaintiff was using the same tools that he usually used in his employment and plaintiff was injured while exposed to a risk of his employment.
7. On May 19, 1994, shortly after 3:30 p.m., the plaintiff was running wood over the joiner to make a curtain rod for his personal use when the wood was kicked out of the machine; and plaintiff's third and fourth fingers on his left hand were amputated at the middle phalanx portion. The injury was prior to the regular 4:00 p.m. end of shift.
8. The plaintiff went to the front office and reported the injury to Michael Jones. The plaintiff was taken to the local hospital in Davidson County, but was transported by ambulance to N.C. Baptist Hospital in Winston-Salem, where he came to be under the treatment of orthopaedic surgeon Dr. Robert D. Teasdall.
9. On September 20, 1994, Dr. Teasdall noted that plaintiff was at maximum medical improvement. In his notes, Dr. Teasdall refers to the third finger as the fourth, and the fourth finger as the fifth. Specifically, Dr. Teasdall described the amputation "of the fourth finger was approximately 2 cm distal to the PIP of the fourth finger, and approximately .5 cm distal to the PIP in the fifth finger." Dr. Teasdall opined that plaintiff would retain a twenty-one percent loss of use of hand function.
10. The plaintiff was out of work from May 20, 1994 until June 20, 1994. Upon his return to work, plaintiff voluntarily terminated his employment and, thereafter, began working for another employer at a comparable salary.
****************
The foregoing findings of fact and conclusions of law engender the following
CONCLUSIONS OF LAW
1. In order for an injury to arise out of the employment, it must be a natural and probable consequence or incident of the employment and a natural result of one of its risks. Lee v. F. M. Henderson Associates, 17 N.C. App. 475 (1973). At the time of plaintiff's injury, he was engaging in personal woodworking while awaiting a pattern he had been asked to prepare for the employer. The defendant allowed employees to use the equipment for personal woodworking during slow times at work. One of the risks incidental to employment as a power saw operator is that of getting cut. Therefore, the plaintiff's injury is compensable.
2. As a result of the compensable injury, the plaintiff is entitled to temporary total disability compensation from 20 May 1994 to 20 June 1994. Defendants are entitled to a credit for wages paid to plaintiff during said period against disability compensation due the plaintiff when proof of payment of said wages is presented as ordered herein.
3. The plaintiff is entitled to permanent partial disability compensation at the rate of $366.68 per week, as a result of the twenty-one percent rating for loss of use of the left hand for a period of 42 weeks. N.C. GEN. STAT. § 97-31 (12).
4. The plaintiff is entitled to have defendants pay for medical expenses incurred as a result of the compensable injury of May 19, 1994.
**************
Based on the foregoing findings of fact and conclusions of law the Full Commission enters the following
AWARD
1. Subject to an attorney's fee hereinafter approved, defendants shall pay to the plaintiff 42 weeks of permanent partial disability compensation at the rate of $366.68 per week. As much of this sum as has accrued shall be payable to plaintiff in a lump sum.
2. Subject to an attorney's fee hereinafter approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $366.68 per week for the period from 20 May 1994 through 20 June 1994. Defendants are entitled to a credit against any weekly compensation due for any wages paid to plaintiff during such week upon submission of proof of wages paid as ordered below.
3. A reasonable attorney's fee of twenty-five percent of the sums awarded plaintiff in paragraphs 1 and 2 above shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay all medical expenses incurred as a result of the compensable injury when bills for the same have been properly submitted and approved through procedures adopted by the Commission.
5. Defendant shall pay the costs.
*****************
ORDER
IT IS FURTHER ORDERED that defendants shall submit to the Full Commission within 20 days proof by stipulated documents, or otherwise, of any wages paid to plaintiff during the period from 20 May to 20 June 1994. Any deposition taken pursuant to this Order shall be at defendant's expense, including rebuttal evidence presented by plaintiff.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ________________________ DIANNE C. SELLERS COMMISSIONER
BSB:be