***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, the Industrial Commission has jurisdiction of the parties and of the subject matter, and there is no question as to misjoinder or non-joinder of parties.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. Plaintiff alleges that she sustained a compensable injury on November 8, 2003.
4. An employment relationship existed between the parties on November 8, 2003.
5. Plaintiff's average weekly wage is $988.56, yielding a compensation rate of $659.05.
6. The parties stipulated to Exhibits 1-10 as set forth as plaintiff's exhibits in the pre-trial agreement.
7. The issues before the Full Commission are whether plaintiff's injury by accident arose out of and in the course of the employment, whether plaintiff suffered any resulting disability, and, if so, what benefits plaintiff is entitled to receive.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the Deputy Commissioner's hearing, plaintiff was 41 years old. Plaintiff worked for defendant-employer 15 years and was an international flight attendant. The union agreement between defendant-employer and the international flight attendants provided that their on-duty time began one and one half hours prior to the scheduled departure of an international flight and continued until the flight attendants were released from duty 30 minutes after block-in time of the last flight segment or scheduled arrival or actual release time, whichever is later. The flight attendants were paid for 30 minutes after the latest time.
2. Charlotte-Douglas International Airport (hereinafter "Charlotte-Douglas") in Charlotte, North Carolina was plaintiff's home base. As part of her job duties, plaintiff was required to wear her uniform while she was on the clock and on the airport premises. Plaintiff was also required to carry an emergency manual and a suitcase provided by defendant-employer for plaintiff's personal belongings.
3. Plaintiff routinely parked at an employee remote parking area that was located approximately two miles from the terminal and was surrounded by a fence. Access to the lot was gained by a gate-arm, which was activated by using a proximity card placed in a scanner. If the card was valid, the gate-arm opened. Defendant-employer furnished plaintiff a proximity card. Plaintiff was also furnished with a "hanger pass" that attached to her rearview mirror, which read "Employee Parking Permit Airport Charlotte, NC #6122 U.S. Airways."
4. Charlotte-Douglas also had parking that was not remote and that was open to the public. The remote parking furnished by defendant-employer and Charlotte-Douglas for employees was not open to the public, and access to the parking area was controlled by the Airport Authority for other airport employees and by defendant-employer for its own employees. The other areas of parking open to the public were not free parking areas; moreover, the employees of defendant-employer were expected to use the remote parking furnished to them since they frequently traveled for days at a time. Defendant-employer's international flights generally lasted three days, creating a specific need for long-term parking for their international flight employees.
5. The free parking and shuttle bus service were provided to employees pursuant to the union contract with the flight attendants which states:
 In the event free parking facilities for employees are not available at flight attendant domiciles, the Company will assume the monthly parking charge up to a maximum of five dollars ($5.00) per month, assessed by the appropriate authority (airport, etc.) for parking in an area designated for employees. This provision will not apply to original or replacement charges to employees for parking decals, stickers, gate keys, or similar items.
6. Michael Penny, manager of parking and ground transportation at Charlotte-Douglas, testified and the Commission finds that Charlotte-Douglas determined the relative number of employees for each employer at the airport and made an apportioned assessment against each employer to pay for the costs of the parking lot and for the shuttle bus to the remote parking area. Defendant-employer paid Charlotte-Douglas for the parking lot, for the use and benefit of its employees. Defendant-employer controlled access to the parking lot for its employees by administering proximity cards and rearview mirror hanger identification tags bearing the name of defendant-employer. The Charlotte-Douglas Airport Aviation Department was responsible for the upkeep and general maintenance of the parking lots.
7. On November 8, 2003, plaintiff returned to Charlotte-Douglas from an international flight originating in Frankfurt, Germany. The flight was scheduled to arrive at 3:40 p.m.; however, it arrived early at 2:50 p.m. Pursuant to the union agreement, plaintiff was paid through 4:10 p.m., based on the latest of the three potential times (the scheduled arrival time of 3:40 p.m.), plus the additional 30 minutes. Plaintiff cleared customs with her baggage and went to the employee bus stop to pick up the shuttle bus that would take her to the remote parking area. The particular shuttle bus that plaintiff rode was designated to take employees to the remote parking area that was used substantially by defendant-employer's employees, although other employees of the airport were also permitted to use that parking lot. Plaintiff had a right to use the shuttle bus free of charges, pursuant to her contract with defendant-employer, and the shuttle bus was furnished as an incident of her employment.
8. Between 3:15 p.m. and 3:20 p.m., plaintiff exited the shuttle bus through a narrow stairwell. Plaintiff was carrying her bag, went to step down, and fell out of the bus. Plaintiff sustained injuries to her right ankle as a result of the fall.
9. Because plaintiff was in a great deal of pain and concerned about her injuries, fellow flight attendant Audrey Ryan drove her to the hospital. Ms. Ryan borrowed plaintiff's cellular phone to call her husband to let him know she had arrived and was taking plaintiff to the hospital. Plaintiff then called defendant-employer several times and also called her husband. All of the calls were made within 30 minutes of the scheduled arrival time or prior to 4:10 p.m.
10. Following the incident on November 8, 2003, plaintiff received treatment for her ankle injury at the emergency room of Providence Hospital Northeast in Columbia, South Carolina, which is a facility near her home. Doctors at Providence Hospital Northeast took an x-ray of plaintiff's right ankle, which showed soft tissue swelling laterally, but did not identify a fracture. Plaintiff was diagnosed with a sprain to the right ankle and was instructed to elevate and ice her ankle, avoid putting weight on it, and follow-up with her doctor.
11. On November 10, 2003, LaTanya Harris, plaintiff's supervisor, referred plaintiff to the company physician, Dr. Hershline at Work Well, who wrote plaintiff out of work until her next scheduled appointment on November 17, 2003. Dr. Hershline noted that the x-rays taken on November 8, 2003, showed a possible fracture of the lateral malleolus and recommended an evaluation by Charlotte Orthopedic Specialists.
12. On November 12, 2003, Ron Field, PA-C with Charlotte Orthopedics saw plaintiff. The examination showed swelling and ecchymosis of the ankle joint. Mr. Field recommended a lace-up ankle brace, follow-up with Work Well, and continued plaintiff out of work through November 18, 2003.
13. On November 19, 2003, plaintiff followed up with Dr. Christopher Mazoue of University Specialty Clinics, University of South Carolina School of Medicine. Dr. Mazoue diagnosed right grade II ankle sprain and indicated that since plaintiff was a flight attendant and must be stable on her feet, it would be several weeks before she would be able to return to work. Dr. Mazoue also recommended physical therapy. On January 22, 2004 plaintiff was released to return to work effective January 23, 2004.
14. Plaintiff continued treating with Dr. Mazoue through March 4, 2004, and her condition slowly improved with medications, physical therapy and the use of a short leg-walking cast. At the March 4, 2004, office visit, Dr. Mazoue anticipated plaintiff's condition would continue to improve, although it would take a long period of time to fully heal. Dr. Mazoue also recommended plaintiff continue physical therapy and return to the clinic in six to eight weeks for reevaluation.
15. Plaintiff was totally disabled and unable to work due to her injury from November 8, 2003 until January 23, 2004. Defendant-employer does not offer light-duty work for flight attendants, pursuant to the union contract.
16. At the time of the hearing before the Deputy Commissioner plaintiff had not reached maximum medical improvement and had not received a rating for any permanent functional impairment to the right ankle.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The general rule in this state is that an injury by accident that occurs while an employee travels to and from work is not one that arises out of or in the course of employment. Royster v. Culp, Inc., 343 N.C. 279,281, 470 S.E.2d 30, 31 (1996). Recognized exceptions to this rule include the premises exception, the special errands exception, the traveling salesman exception, and the contractual duty exception. Stanley v. BurnsInternational Security Services, 161 N.C. App. 722, 589 S.E.2d 176
(2003).
2. However, under the particular circumstances in this case, the "coming and going rule" does not apply. Plaintiff was injured in the course and scope of her employment with defendant-employer, in that the injury to her right ankle took place: (a) while she was on the time clock and being paid by defendant-employer; (b) when plaintiff was wearing an official U.S. Airways uniform and carrying employer-issued luggage and flight attendant bag furnished by defendant-employer; (c) while she was still on the premises of the airport which was her home base; (d) when she was using transportation furnished as a matter of right by defendant-employer to a remote parking area; (e) while in a parking lot to which access was controlled by defendant-employer and for which defendant-employer issued plaintiff a proximity card to enter the parking area and a hangar pass to authorize her to park her car in the lot; and (f) in a free parking area furnished pursuant to plaintiff's employment contract. N.C. Gen. Stat. § 97-2(6). See, Hunt v. State, 201 N.C. 707,161 S.E. 203 (1931); Bellamy v. Manufacturing Co., 200 N.C. 676,158 S.E. 246 (1931). An injury is compensable if it occurs while the employee is doing what she is reasonably expected to do within a time she is employed and at a place she is reasonably expected to be during that time. Hunt v. State, supra. Plaintiff's injury occurred while she was being paid by defendant-employer and while she was being transported on a conveyance that went to and from her work place and was provided by defendant-employer to enable its international flight crew to park in a remote area and which plaintiff was entitled to use by virtue of her contract of employment. Id.
3. Assuming arguendo that the coming and going rule applies to the facts in this case, plaintiff's injury is compensable under the contractual duty exception. The contractual duty exception states that an injury is compensable if "an employer contractually provides transportation or allowances to cover the cost of transportation."Stanley v. Burns Int'l Sec. Servs., 161 N.C. App. 722, 725,589 S.E.2d 176, 178 (2003). In order to apply this exception, the transportation must be provided as a matter of right as a result of the employment contract. Hunt v. Tender Loving Care Home Care Agency, Inc.,153 N.C. App. 266, 569 S.E.2d 675 (2002). In this case, the free parking and the free shuttle bus that transported plaintiff to the remote parking area were provided pursuant to her employment contract with defendant-employer. Defendant-employer paid a pro rata share for each employee to have the use of the shuttle bus in order to be transported to the remote parking area. Defendant-employer also paid Charlotte-Douglas for the use of the parking lot for the benefit of its employees. As one of defendant-employer's employees, plaintiff had the right to use the shuttle bus and parking area free of charges, pursuant to her contract with defendant-employer and both were furnished as an incident of her employment.
4. The fact that defendant-employer did not actually own the shuttle bus or parking area does not affect the "contractual duty" exception. InDependents of Phifer v. Dairy, 200 N.C. 65, 156 S.E. 147 (1930), the Supreme Court stated:
 [W]here the conveyance for the employees has been provided by the employer, . . . whether such conveyance be his own or is one used for his benefit by virtue of a contract with another, the same being in compliance with one of the implied or express terms of the contract of employment, for the mere use of the employees, and is one which the employees are required, or as a matter of right are permitted, to use by virtue of their contract of employment, the employer is liable.
Id. at 68, 156 S.E. at 148.
5. As a result of the compensable injury, plaintiff was temporarily and totally disabled from any employment from November 8, 2003 through January 22, 2004 and is entitled to receive temporary total disability compensation at the rate of $659.05 per week from November 8, 2003 through January 22, 2004. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred as a result of her compensable injury by accident for so long as may be reasonably required to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability benefits at the rate of $659.05 per week from November 8, 2003 through January 22, 2004. This compensation has accrued and shall be paid in a lump sum, subject to the attorney fee approved below.
2. As plaintiff has not been evaluated for a permanent partial disability rating as the result of the compensable injury by accident, this Opinion and Award does not address this issue. However, if in the future the parties are unable to reach an agreement regarding this issue, either party may request a hearing before the Commission.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury by accident for so long as may be reasonably required to effect a cure, give relief or lessen plaintiff's period of disability.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This 9th day of September 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER