RALPH E. LEE, JR. v. F. M. HENDERSON & ASSOCIATES AND
        IOWA MUTUAL INSURANCE COMPANY

No. 14

(Filed 14 November 1973)

1. **Master and Servant § 94— workmen's compensation — Commission's modification of commissioner's findings**

    In reviewing a workmen's compensation award of the hearing commissioner, the Industrial Commission is authorized to modify or strike out findings of fact made by the hearing commissioner, if in the judgment of the Commission such findings were not proper. G.S. 97-85.

2. **Master and Servant § 56— workmen's compensation — causal relation between employment and injury**

    In order for an injury to be compensable under the Workmen's Compensation Act, there must be some causal relation between the employment and the injury; but if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is one which ought to have been foreseen or expected.

3. **Master and Servant § 56— workmen's compensation — injury arising "out of" employment**

    It is generally said that an injury arises out of the employment when it is the natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment.

4. **Master and Servant § 56— workmen's compensation — building doghouse for personal use — injury arising out of employment**

    Plaintiff, a saleman employed by a cabinet manufacturer, worked in his employer's shop during his training period and obtained permission from his superiors to build a doghouse for his own use from scrap material during working hours when he had nothing else to do. Each of the employer's salesmen was required to work in the shop every third Saturday. While on duty in the shop one Saturday plaintiff cut some cabinet parts and, during a lull, resumed work on his uncompleted doghouse and injured himself with an electric saw. A practice or custom had been established by the employer allowing its employees to use its equipment for personal projects. *Held:* Plaintiff's use of his employer's electric saw and scrap material to build a doghouse during the Saturday morning lull was a reasonable activity and the risk inherent in such activity was a risk of the employment; therefore, plaintiff's injury arose "out of" his employment within the meaning of the Workmen's Compensation Act.

ON *certiorari* to the Court of Appeals.

Plaintiff seeks compensation from his employer, F. M. Henderson & Associates, and Iowa Mutual Insurance Company, the

employer's compensation insurance carrier, for an alleged injury by accident arising out of and in the course of the employment.

The jurisdictional facts were stipulated.

The initial hearing was before Chairman J. Howard Bunn, Jr. The evidence consisted of the testimony of plaintiff and of Norman Altman, employer's shop foreman. Based upon *his* findings of fact, Chairman Bunn concluded that plaintiff's injury *was* by accident arising out of and in the course of the employment and that plaintiff was entitled to compensation for permanent partial disability for the loss of a first finger and for the loss of a second finger as set forth in G.S. 97-31(2) (3). Thereupon, Chairman Bunn entered an award in plaintiff's favor.

Pursuant to defendants' notice of appeal and application for review, the case was heard by the Full Commission (Commission) as provided in G.S. 97-85. The "Opinion and Award for the Full Commission" by Commissioner Stephenson, Commissioner Shuford and Chief Deputy Commissioner Delbridge concurring, "vacates and sets aside the Opinion and Award of Chairman Bunn in its entirety." Based upon *its* findings of fact, the Commission concluded that the injury sustained by plaintiff on 26 September 1970 *was not* by accident arising out of and in the course of the employment. An order entered by the Commission denied plaintiff's claim and provided that each side pay its own costs.

The following are the Findings of Fact of the Commission:

"1. The defendant employer owns and operates a business which consists of the manufacturing and installation of cabinet units to businesses in the Raleigh area. The business consists of designing cabinet layouts for its customers and utilizing basic units constructed by the manufacturer. Carl Smith was the employer's manager for the Raleigh office and Norman Altman was the shop foreman. At the time complained of, the employer's shop and warehouse was one unit and located under one roof.

"2. Plaintiff is twenty-three years of age and was hired by the employer in early August of 1970 as a salesman. For the first two and one-half weeks of his employment, he worked exclusively in the employer's shop and warehouse to familiarize himself with the stock and the system of order as well as the

Lee v. Henderson & Associates

period of time necessary for a cabinet shipment. All of the employer's salesmen were required to work in the shop and warehouse for approximately thirty days as a part of the training program, but plaintiff's training period was shorter than average due to the fact that he had had some experience with woodworking machinery while in the Armed Forces. For the first two and one-half weeks of his employment, plaintiff worked exclusively in the shop and warehouse, actually building cabinets. He then started riding with a salesman part time and working in the shop part time. At the time complained of, he worked in the shop only every third Saturday, the three salesmen rotating so that someone would be in the shop on Saturday mornings, and each working his turn. This was the first Saturday plaintiff had worked on his rotation since becoming a full-time salesman.

"3. The employer's shop had several pieces of highly sophisticated woodworking machinery, including but not limited to a rotisserie saw used for cutting formica and various pieces of lumber, and several skill and saber saws. One of the saws was a table-mounted electric saw with the blades protruding from a plate in the table which could be raised or lowered to regulate the depth of the cut. The safety guard on this particular table saw was missing at the time complained of. Plaintiff was never given any instructions by the defendant employer as to the use of this table saw, but he had had experience in working with this type of equipment while in the Army and was generally familiar with such equipment.

"4. Soon after beginning work with the defendant employer in early August of 1970, plaintiff had a conversation with Carl Smith and told Smith that he would like to build a doghouse to use at his home in the employer's shop. He obtained permission from Smith to work on this doghouse in the employer's shop during working hours when he had nothing else to do and to use 'scrap' material to build the doghouse. In fact, Smith helped plaintiff soon after beginning this employment to design the doghouse on company time, using company materials. When plaintiff had finished his training program, the doghouse was only partially completed and was left in the shop.

"5. On Saturday, September 26, 1970 plaintiff began work for the defendant employer in the shop and warehouse, this being his Saturday to work. For the first hour, he worked in

Lee v. Henderson & Associates

the office and at approximately 8:45 A.M., the owner of the business, F. M. Henderson, instructed plaintiff by telephone to open the warehouse and shop and do whatever he saw needed to be done there. Plaintiff then went into the warehouse and shop, swept the floors, cut some cabinet parts, and then helped the shop foreman, Norman Altman, unload a load of cabinets. He then asked Altman to reset the saw so that it could be used to rip some three-eighths inch plywood scrap. After Altman reset the saw, he left, since he (Altman) was not required to work on this Saturday. Plaintiff then started ripping some three-eighths inch plywood scrap which he was intending to use in the completion of his doghouse. While ripping the plywood with the table saw above-described, his left hand became caught in the saw, resulting in loss by amputation of the first and second fingers of the left hand.

"6. The employer has continued plaintiff's salary to the present time and plaintiff has lost no wages by reason of his injury. A portion of his medical expenses has been paid by plaintiff's personal Blue Cross hospitalization carrier. No part of the medical expense incident to the injury has been paid by the employer or the workmen's compensation carrier in this case.

"7. It was not unusual for plaintiff and his co-workers to use the defendant employer's equipment for personal projects when the employees were not busy with company work. A practice or custom had been established by the employer, allowing the employees to use such equipment. However, at the time complained of plaintiff was performing an act personal to himself; constructing a doghouse for his own use, and this activity in no way enhanced the business of the defendant employer. At the time complained of, plaintiff did not sustain an injury by accident arising out of and in the course of his employment."

Plaintiff excepted to (1) designated findings of fact, (2) designated conclusions of law, and (3) the order denying his claim, and appealed. G.S. 97-86. Holding "that the Commission's conclusion of law that claimant did not sustain an injury by accident arising out of and in the course of his employment is not supported by its findings of fact which are pertinent to this appeal," the Court of Appeals reversed the order of the Commission and remanded the cause "for proceedings not inconsistent with [its] opinion." 17 N.C. App. 475, 195 S.E. 2d 48. On 30 April 1973 the Supreme Court allowed defendants' petition for certiorari to review the decision of the Court of Appeals.

*Teague, Johnson, Patterson, Dilthey & Clay by C. Woodrow Teague and Robert W. Sumner for defendant appellants.*

*Manning, Fulton & Skinner by W. Gerald Thornton for plaintiff appellee.*

BOBBITT, Chief Justice.

Upon appeal, plaintiff assigned as error the following portions of the Commission's findings of fact: (1) The finding "contained in paragraph No. 2 to the effect that the plaintiff was a 'full-time salesman' at the time of the accident"; (2) the finding "contained in paragraph No. 4 to the effect that the plaintiff had finished his training program prior to the time of the accident"; and (3) the finding "contained in paragraph No. 7 which reads as follows: 'However, at the time complained of, plaintiff was performing an act personal to himself, constructing a doghouse for his own use, and this activity in no way enhanced the business of defendant employer. At the time complained of, plaintiff did not sustain an injury by accident arising out of and in the course of his employment.' "

The Court of Appeals did not pass upon plaintiff's contentions that these findings were not supported by competent evidence. It decided that *the facts found by the Commission* established that plaintiff's injury was compensable.

[1] In reviewing the award of the hearing commissioner the Commission was authorized by G.S. 97-85 to "reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award." This authority carried with it "the power to modify or strike out findings of fact made by the . . . hearing Commissioner if in the judgment of the Commission such finding [was] not proper." *Brewer v. Trucking Co.*, 256 N.C. 175, 182, 123 S.E. 2d 608, 613 (1962).

[2] The only injury which is compensable under the Workmen's Compensation Act is an "injury by accident arising out of and in the course of the employment." G.S. 97-2(6). "The words 'out of' refer to the origin or cause of the accident and the words 'in the course of' to the time, place, and circumstances under which it occurred. [Citations omitted.] There must be some causal relation between the employment and the injury; but if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is one which ought to have been foreseen or expected."

*Conrad v. Foundry Company,* 198 N.C. 723, 726, 153 S.E. 266, 269 (1930).

Unquestionably, plaintiff's injury by accident occurred "in the course of" his employment. It occurred on the morning of Saturday, 26 September 1970, when, as required by the terms of his employment, he was on duty in defendant's shop and warehouse. Whether his injury arose "out of" his employment is the determinative question.

[3] "An accident occurring during the course of an employment . . . does not *ipso facto* arise out of it. The term 'arising out of the employment' is not susceptible of any all-inclusive definition, but it is generally said that an injury arises out of the employment 'when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment.' *Perry v. Bakeries Co.,* 262 N.C. 272, 274, 136 S.E. 2d 643, 645 (1964)." *Robbins v. Nicholson,* 281 N.C. 234, 238-39, 188 S.E. 2d 350, 354 (1972).

"In practice, the 'course of employment' and 'arising out of employment' tests are not, and should not be, applied entirely independently; they are both parts of a single test of work-connection, and therefore deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other." 1 Larson, Workmen's Compensation Law § 29.00 (1972).

"Whether an accident arises out of the employment is a mixed question of fact and law, and the finding of the Commission is conclusive if supported by any competent evidence; otherwise, not." *Cole v. Guilford County,* 259 N.C. 724, 726, 131 S.E. 2d 308, 310 (1963).

There was competent evidence to support the Commission's findings that plaintiff was "a full-time salesman" at the time of the accident; that he had finished his training program; and that he was injured when operating the defendant's electric saw to construct a doghouse for his own use. Unchallenged pertinent factual findings are set out below.

"Specific findings of fact by the Industrial Commission are required. These must cover the crucial questions of fact upon which plaintiff's right to compensation depends. [Citations omitted.] Otherwise, this Court cannot determine whether an adequate basis exists, either in fact or in law, for the ultimate

finding as to whether plaintiff was injured by accident arising out of and in the course of his employment. [Citation omitted.]" *Guest v. Iron & Metal Co.*, 241 N.C. 448, 451, 85 S.E. 2d 596, 599 (1955).

The Commission's specific findings of fact include the following:

Plaintiff was employed in early August of 1970. For the first two and one-half weeks of his employment, plaintiff worked exclusively in the employer's shop and warehouse, "actually building cabinets." Ordinarily persons employed as salesmen were required to work in the shop and warehouse for approximately thirty days as a part of the training program. Plaintiff's training period was shorter because of his previous experience with woodworking machinery while in the armed forces. Each salesman was required to "work in the shop" every third Saturday morning. It was plaintiff's turn to perform this duty on Saturday, 26 September 1970.

During his training period, plaintiff obtained permission from Carl Smith, the manager of the employer's Raleigh office, to build a doghouse in the employer's shop during working hours when he had nothing else to do, using "scrap" material for that purpose. Smith helped plaintiff design the doghouse "on company time, using company materials." The doghouse was partially completed and left in the shop when plaintiff finished his training program.

After reporting for work on the morning of Saturday, 26 September 1970, plaintiff received telephone instructions from F. M. Henderson, the owner of the business, "to open the warehouse and shop and do whatever he saw needed to be done there." Thereupon, plaintiff "went into the warehouse and shop, swept the floors, cut some cabinet parts, and then helped the shop foreman, Norman Altman, unload a load of cabinets." At plaintiff's request, Altman reset the table saw "so that it could be used to rip some three-eighths inch plywood scrap." After he reset the saw, Altman left, he not being required to work on this Saturday. While "ripping some three-eighths inch plywood scrap which he was intending to use in the completion of his doghouse," plaintiff's left hand was caught in the saw.

"It was not unusual for plaintiff and his co-workers to use the defendant employer's equipment for personal projects when the employees were not busy with company work. A prac-

tice or custom had been established by the employer, allowing the employees to use such equipment."

The Commission's specific findings establish (1) that plaintiff's job included the actual use of defendant's shop equipment in the construction of cabinets and cabinet parts; (2) that plaintiff had "cut some cabinet parts" on Saturday, 26 September 1970, prior to his injury; (3) that he was injured when, during a Saturday morning lull, he resumed work on his uncompleted doghouse; (4) that, as permitted by his employer's established policy, he was using defendant's electric saw and "scrap" material; and (5) that plaintiff's construction of the doghouse under these circumstances had the express approval, cooperation and assistance of his superiors.

Unquestionably, plaintiff's injury would be compensable if he had been injured a few minutes earlier while engaged in cutting cabinet parts. Too, his right to compensation would be clear if he had been injured later when cutting a cabinet part for some drop-in customer. The question is whether, under the circumstances of this case, compensation should be denied solely on the ground that the particular piece of plywood on which he was working when injured was intended for use in the doghouse, a project specifically approved by his superiors.

Numerous cited decisions support the statement that "[t]he Workmen's Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees or their dependents, and its benefits should not be denied by a technical, narrow, and strict construction." 5 Strong, North Carolina Index 2nd, Master and Servant § 47.

Plaintiff was required to remain on duty in the shop and warehouse during the morning of Saturday, 26 September 1970, to act for his employer in the event any need for such action arose.

The rule applicable when the employee has been directed, *as part of his duties,* to remain in a particular place or locality until directed otherwise or for a specified length of time, has been well stated by the Court of Appeals of New York in *Davis v. Newsweek Magazine,* 305 N.Y. 20, 28, 110 N.E. 2d 406, 409 (1953), as follows: "In those circumstances, the rule applied is simply that the employee is not expected to wait immobile, but may indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such activity is an incident of his

employment." Quoting this statement of the rule and basing decision thereon, the Court of Appeals of New York in *Penzara v. Maffia Bros.*, 307 N.Y. 15, 18, 119 N.E. 2d 570, 571 (1954), held the employee was entitled to compensation when injured under circumstances closely analogous to those under consideration in the present case.

In *Penzara*, undisputed evidentiary facts tended to show that claimant was employed as a handyman in an automobile supply and machine shop; that he was required to remain upon employers' premises during intervals when there was no work available on a customer's automobile, but was customarily permitted to use employers' tools and do work upon his own automobile when not otherwise occupied; and that, during a slack period, he was injured by an accident when fashioning a spring steel clip for use on his own automobile. Compensation was awarded.

On authority of *Penzara*, compensation was awarded in *Ingraham v. Lane Constr. Corp.*, 285 App. Div. 572, 139 N.Y.S. 2d 347, aff'd mem., 309 N.Y. 899, 131 N.E. 2d 577 (1955).

[4] Under the circumstances of the present case, we hold that plaintiff's use of his employer's electric saw and "scrap" material during the Saturday morning lull was a *reasonable* activity and that the risk inherent in such activity was a risk of the employment. The reasonableness of plaintiff's activity on this occasion is attested by the express approval of his superiors as well as by the established policy of his employer.

In *Bellamy v. Manufacturing Co.*, 200 N.C. 676, 158 S.E. 246 (1931), and in *Stubblefield v. Construction Co.*, 277 N.C. 444, 177 S.E. 2d 882 (1970), the injury occurred when the employee was required to remain at his place of employment but had no task to perform in furtherance of the employer's business. In *Bellamy*, the claimant, an employee in the spinning department, was required to remain in the mill for a half hour after work therein had stopped. During this period she was injured by accident while riding in an elevator to another floor of the mill for the purpose of seeing about getting her friend a job in the mill. In *Stubblefield*, an employee of an electrical construction company was fatally injured on the premises of the Cherokee Brick Company. While awaiting the return of his foreman, the employee was standing in a room where several conveyor belts were in operation. The employee, when using his

idle time to knock dust and pieces of brick from the conveyor rollers with a pair of pliers, came into contact with the conveyor and received fatal injuries. Compensation was awarded in both *Bellamy* and *Stubblefield.*

In *Jones v. Desk Co.,* 264 N.C. 401, 141 S.E. 2d 632 (1965), cited by defendants, the factual situation was quite different from that now under consideration. In *Jones,* the Desk Company's policy did not permit an employee to do personal work on company time unless he first obtained permission from his foreman. Nor did it permit him to use cull or waste material for personal purposes without first presenting it to his superior for determination of its value and payment of the price fixed, if any. When injured, the plaintiff was using the Desk Company's "shaper" and material for his personal purposes and on company time, without obtaining permission to do so, all in violation of the Desk Company's policy.

In *Maheux v. Cove-Craft, Inc.,* 103 N.H. 71, 164 A. 2d 574 (1960), compensation was awarded an employee who was injured at his place of employment during noon lunch hour when operating a table saw to manufacture a checkerboard for his own use. The evidence disclosed that such employees used their employer's saw during the lunch hour for individual projects and that the employer, although he had notice of this practice, did not forbid such use. The court's opinion states: "It is settled in this jurisdiction that activities of a personal nature, not forbidden, but reasonably to be expected, may be a natural incident of the employment, so that injury suffered in the course of such activities is compensable." *Id.* at 74, 164 A. 2d at 576.

In the later case of *Hanchett v. Brezner Tanning Co.,* 107 N.H. 236, 221 A. 2d 246 (1966), compensation was awarded the dependents of an employee who was fatally injured when repairing his personal car during working hours, the car having slipped off the jack and crushed him. The employer maintained a garage and allowed its employees to repair their cars at this garage even during working hours. Under the circumstances, it was held that an occasional use by an employee of the employer's facilities to make repairs on his own car was reasonably expected and that the employee's death was compensable.

We have not overlooked the Commission's finding or conclusion that plaintiff when injured "was performing an act personal to himself" and that "this activity in no way enhanced

the business of the defendant employer." We take this as a finding that the particular piece of plywood with which plaintiff was working when injured was for his own personal use and that plaintiff's work thereon was of no value to the business of the employer. The specific findings of fact show that the employer, by its policy of permitting and encouraging such use of its equipment and "scrap" material, had determined that this course was for the mutual advantage of employer and employee in respect of employer-employee relationships as well as in development of the employees' skill in the areas of planning and construction. *See Wamhoff v. Wagner Electric Corp.*, 354 Mo. 711, 190 S.W. 2d 915, 161 A.L.R. 1454 (1945).

Our research has disclosed two decisions, *Shirley v. National Tank Co.*, 203 Okla. 508, 223 P. 2d 540 (1950), and *Foster v. Continental Gin Company*, 261 Ala. 366, 74 So. 2d 474 (1954), which support defendants' contentions. Compensation was denied under circumstances undistinguishable from those in the case before us. In each, decision was based primarily upon the fact that at the precise time of injury the employee was working on an article for his personal use. In our view, the denial of compensation solely on this ground narrowly and unduly restricts the protection the Workmen's Compensation Act was intended to provide injured employees.

On this appeal, we need not decide whether we should adopt a rule similar to that enunciated in the cited decisions of the Supreme Court of New Hampshire. In affirming the decision of the Court of Appeals, we simply hold that, under the circumstances of the present case, plaintiff's use of his employer's electric saw and "scrap" material during the Saturday morning lull was a *reasonable* activity and that the risk inherent in such activity was a risk of the employment.

Affirmed.