R. W. WATKINS, Claimant v. CITY OF WILMINGTON, Employer, and THE TRAVELERS INSURANCE COMPANY, Carrier, Defendants

No. 90

(Filed 17 June 1976)

1. **Master and Servant § 94— workmen's compensation — review of findings by Full Commission**

In reviewing the findings made by a deputy commissioner or by an individual member of the Industrial Commission when acting as a hearing commissioner, the Commission may review, modify, adopt, or reject the findings of fact of the hearing commissioner.

Watkins v. City of Wilmington

2. **Master and Servant § 56— workmen's compensation — whether accident arises out of employment**

Whether an accident arises out of the employment is a mixed question of fact and law, and the finding of the Industrial Commission is conclusive if supported by any competent evidence; otherwise, not.

3. **Master and Servant § 56— workmen's compensation — fireman on duty — injury while repairing vehicle during lunch hour**

Plaintiff fireman's act in assisting the cleaning of the oil breather cap from a fellow employee's car during the lunch period was a reasonable activity, and injuries received by plaintiff when gasoline poured on the breather cap caught fire arose out of and in the course of his employment as a fireman, where plaintiff was required by his employer to remain at the fire station during his entire twenty-four-hour tour of duty, firemen often made minor repairs to their automobiles during their lunch hour, this practice was well known and allowed by plaintiff's superiors, and repairs of a minor nature to personal automobiles were to an appreciable extent a benefit to the fire department in that by keeping their automobiles in working condition the firemen could use them to report for duty when they were off duty in the event of an emergency.

APPEAL by defendants under G.S. 7A-30(2) from the decision of the Court of Appeals, reported in 28 N.C. App. 553, 221 S.E. 2d 910 (1976), affirming the award of the North Carolina Industrial Commission granting plaintiff compensation.

Plaintiff seeks compensation from his employer, City of Wilmington, and The Travelers Insurance Company, the employer's compensation insurance carrier, for alleged injury by accident arising out of and in the course of his employment.

Jurisdictional facts were stipulated.

The initial hearing was before Deputy Commissioner W. C. Delbridge. Based upon all competent evidence adduced at hearing, Deputy Commissioner Delbridge found facts as follows:

"1. Plaintiff is a male, age 26, and was on October 18, 1973, and approximately five and one-half years prior thereto employed with the defendant employer as a fireman. When on active tour of duty plaintiff's hours were from 8:00 a.m. to 8:00 a.m., then the plaintiff was off duty for the next 24 hours. He sleeps at the fire station and eats at the fire station during his 24 hours tour of duty. When the plaintiff is off duty he is nevertheless on

---

---

call if an emergency should arise. He drives his personal car to and from work and uses it to report to duty in an emergency at times when he is off duty.

"2. On October 18, 1973, the plaintiff was on his tour of duty at the No. 3 Fire Station in Wilmington, North Carolina. A fellow employee had taken the oil breather cap off the motor of his 1965 Chevrolet automobile and was attempting to clean it. This was during the lunch time. The plaintiff came by and inspected the oil breather cap and found it to be dirty and clogged up. It was decided that they would put gasolene on the oil breather cap and set it on fire in order to clean same. The cap was placed on the ground and some gasolene was put on the oil breather cap, and it was set on fire. After the fire had gone out the oil breather cap did not appear to be clean. The plaintiff decided to put some more gasolene on the oil breather cap, and as he started to pour the gasolene on the oil breather cap there was an explosion, and the plaintiff was burned about the face, hands, and arms.

"3. Plaintiff was taken to the hospital by a fellow employee who used his own car to carry the plaintiff to the hospital.

"4. Dr. Horace Moore saw the plaintiff at the hospital. Plaintiff gave a history to the doctor that he sustained flash burns resulting from pouring gasolene on a hot oil cap. Examination of the plaintiff revealed first and second degree burns on the face and upper extremities and third degree burns of the left arm. Plaintiff was treated for the burns and skin grafts were made to the left arm. Dr. Moore treated the plaintiff from October 18, 1973, through December 18, 1973. It was Dr. Moore's opinion that the plaintiff had reached maximum improvement as of January 1, 1974.

"5. The rules and regulations of the fire department, Article 5, Section LX 11 do not permit repairs to personal property by firemen while on duty at any fire station except with permission of the assistant chief in charge.

"6. The Chief of the Wilmington Fire Department testified that the firemen were allowed to make minor repairs on their own personal small equipment while on

Watkins v. City of Wilmington

duty and were allowed to do minor repair work on their personal automobiles. There was no objection to this. This was corroborated by the plaintiff's Captain, Theodore Rhodes.

"7. It was the custom and practice of firemen in Wilmington while on duty at the premises of the defendants' No. 3 Fire Station to make Minor repairs to their personal automobiles at lunch time, and this practice was well known to the plaintiff's superiors, and they made no objection, and in fact, allowed the firemen to make such repairs.

"8. The repairs of a minor nature to personal automobiles were to an appreciable extent a benefit to the fire department in that keeping their automobiles in working condition they could use said automobiles to report to duty when they were off duty in case of an emergency.

"9. Plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant employer on October 18, 1973.

"10. Plaintiff was out of work due to the injury sustained on October 18, 1973, from said date to December 3, 1973.

"11. As a result of the injury in question, the plaintiff has sustained bodily disfigurement which was viewed by the undersigned and is described as follows:

[Here, the Commissioner described in detail the nature and extent of the injury.]

"12. As a result of the injury in question, the plaintiff has suffered bodily disfigurement as hereinabove described which is permanent and serious and is such as would tend to hamper plaintiff in his earnings and in seeking employment, that proper and equitable compensation for said disfigurement is $2,000.00."

The Deputy Commissioner then concluded that plaintiff sustained his injury by accident arising out of and in the course of his employment and awarded compensation for temporary total disability, disfigurement, medical expenses, attorney's fees and costs.

Pursuant to defendants' notice of appeal and application for review, the case was heard by the Full Commission (Com-

mission) as provided by G.S. 97-85. The Commission, Commissioners Vance and Stephenson concurring, and Chairman Robert S. Brown dissenting, adopted and affirmed the opinion and award of Deputy Commissioner Delbridge. On appeal, the Court of Appeals, Chief Judge Brock dissenting, affirmed the opinion and award of the Commission.

*Marshall, Williams, Gorham & Brawley by A. Dumay Gorham, Jr., for defendant appellants.*

*Addison Hewlett, Jr., for plaintiff appellee.*

MOORE, Justice.

[1] On appeal, defendants assign as error the deputy commissioner's Findings of Fact Nos. 6, 7, 8 and 9 for the reason that they were not supported by competent evidence. In reviewing the findings found by a deputy commissioner or by an individual member of the Commission when acting as a hearing commissioner, the Commission may review, modify, adopt, or reject the findings of fact found by the hearing commissioner. The Commission is the fact-finding body under the Workmen's Compensation Act. *Lee v. Henderson & Associates,* 284 N.C. 126, 200 S.E. 2d 32 (1973) ; *Brewer v. Trucking Co.,* 256 N.C. 175, 123 S.E. 2d 608 (1962) ; G.S. 97-85. Here, the facts found by the deputy commissioner were adopted by the Commission as its own. Under G.S. 97-86, this award became conclusive and binding as to all questions of fact.

The only injury which is compensable under the Workmen's Compensation Act is an "injury by accident arising out of and in the course of the employment." G.S. 97-2(6). In interpreting this statute, our Court, in *Conrad v. Foundry Company,* 198 N.C. 723, 726, 153 S.E. 266, 269 (1930), stated:

". . . The words 'out of' refer to the origin or cause of the accident and the words 'in the course of' to the time, place, and circumstances under which it occurred. [Citations omitted.] There must be some causal relation between the employment and the injury; but if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is one which ought to have been foreseen or expected. [Citation omitted.] . . ." *See Lee v. Henderson & Associates, supra.*

Unquestionably, in present case, plaintiff's injury by accident occurred "in the course of" his employment. It occurred on 18 October 1973 when, as required by the terms of his employment, he was on duty at the No. 3 Fire Station in Wilmington, North Carolina. As stated in 1 Larson, Workmen's Compensation Law § 24.00 (1972), "[w]hen an employee is required to live on the premises, either by his contract of employment or by the nature of the employment, and is continuously on call (whether or not actually on duty), the entire period of his presence on the premises pursuant to this requirement is deemed included in the course of employment. . . ."

The determinative question in present case is whether plaintiff's injury arose "out of" his employment. This Court, in *Robbins v. Nicholson,* 281 N.C. 234, 238-39, 188 S.E. 2d 350, 354 (1972), said:

> "An accident occurring during the course of an employment . . . does not *ipso facto* arise out of it. The term 'arising out of the employment' is not susceptible of any all-inclusive definition, but it is generally said that an injury arises out of the employment 'when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment.' *Perry v. Bakeries Co.,* 262 N.C. 272, 274, 136 S.E. 2d 643, 645 (1964). . . ." *See also Lee v. Henderson & Associates, supra.*

Together, the phrases "arising out of" and "in the course of" are used in an attempt to separate work-related injuries from non-work-related injuries. Both tests are part and parcel of the single problem of determining the relationship between injury and employment.

> "In practice, the 'course of employment' and 'arising out of employment' tests are not, and should not be, applied entirely independently; they are both parts of a single test of work-connection, and therefore deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other." 1 Larson, Workmen's Compensation Law § 29.00 (1972).

In *Guest v. Iron & Metal Co.*, 241 N.C. 448, 85 S.E. 2d 596 (1955), this Court said:

"The Act 'should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow and strict interpretation,' *Johnson v. Hosiery Co.*, 199 N.C. 38, 153 S.E. 591; but 'the rule of liberal construction cannot be employed to attribute to a provision of the act a meaning foreign to the plain and unmistakable words in which it is couched,' *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760."

**[2]** Whether an accident arises out of the employment is a mixed question of fact and law, and the finding of the Commission is conclusive if supported by any competent evidence; otherwise, not. *Lee v. Henderson & Associates, supra; Cole v. Guilford County*, 259 N.C. 724, 131 S.E. 2d 308 (1963).

In the case of *Lee v. Henderson & Associates, supra,* plaintiff, a salesman employed by a cabinet manufacturer, worked in his employer's shop during his training period and obtained permission from his superiors to build a doghouse for his own use from scrap material during working hours when he had nothing else to do. Each of the employer's salesmen was required to work in the shop every third Saturday. While on duty in the shop one Saturday, plaintiff had cut some cabinet parts. During a lull, he resumed work on his uncompleted doghouse and injured himself with an electric saw. A practice or custom had been established by the employer allowing its employees to use its equipment for personal projects. This Court, speaking through Chief Justice Bobbitt, stated:

"The rule applicable when the employee has been directed, *as part of his duties,* to remain in a particular place or locality until directed otherwise or for a specified length of time, has been well stated by the Court of Appeals of New York in *Davis v. Newsweek Magazine*, 305 N.Y. 20, 28, 110 N.E. 2d 406, 409 (1953), as follows: 'In those circumstances, the rule applied is simply that the employee is not expected to wait immobile, but may indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such activity is an incident of his employment.' . . ."

In *Stubblefield v. Construction Co.*, 277 N.C. 444, 177 S.E. 2d 882 (1970), an employee of an electrical construction com-

pany was fatally injured on the premises of the Cherokee Brick Company. While awaiting the return of his foreman, the employee was standing in a room where several conveyor belts were in operation. The employee, while using his idle time to knock dust and pieces of brick from the conveyor rollers with a pair of pliers, came into contact with the conveyor and received fatal injuries. Compensation was awarded.

In *Guest v. Iron & Metal Co., supra,* the employee went to a filling station to use the free air facilities in order to repair a tire for his employer. While there, the filling station operator asked the employee to assist him in pushing an automobile off the filling station premises. The employee was injured when he was struck by another automobile while pushing the stranger's automobile. We held that the injuries to the employee arose "out of and in the course of" his employment and were therefore compensable since the employee's acts were to an appreciable extent for the benefit of his employer. We further stated:

> " 'Acts of an employee for the benefit of third persons generally preclude the recovery of compensation for accidental injuries sustained during the performance of such acts, usually on the ground they are not incidental to any service which the employee is obligated to render under his contract of employment, and the injuries therefore cannot be said to arise out of and in the course of the employment. . . . However, where competent proof exists that the employee understood, or had reasonable grounds to believe that the act resulting in injury was incidental to his employment, or such as would prove beneficial to his employer's interests or was encouraged by the employer in the performance of the act or similar acts for the purpose of creating a feeling of good will, or authorized so to do by common practice or custom, compensation may be recovered, since then a causal connection between the employment and the accident may be established.' Schneider, 7 Workmen's Compensation Text, sec. 1675."

In *Bellamy v. Manufacturing Co.,* 200 N.C. 676, 158 S.E. 246 (1931), the claimant, an employee in the spinning department, was required to remain in the mill for a half hour after work therein had stopped. During this period she was injured by accident while riding in an elevator to another floor of the

mill for the purpose of seeing about getting her friend a job in the mill. Again, compensation was awarded.

In present case, the hearing commissioner and the Commission found as a fact that it was the custom with firemen of the Wilmington Fire Department to make minor repairs to their automobiles during their lunch break, that plaintiff's superiors knew of this and made no objection, and that these repairs were to an appreciable extent a benefit to the fire department.

Article 25, Sec. LX11, of the Rules and Regulations of the Wilmington Fire Department, states that permission of the assistant chief on duty should be obtained before a fireman may repair his personal automobile. Plaintiff in this case did not obtain express permission of the assistant chief before attempting to clean his fellow employee's oil breather cap. However, as *Larson* states:

> "The most frequent ground for rejecting violation of rules as a defense, whether under the safety rule or wilful misconduct defense, is the lack of enforcement of the rule in practice. Habitual disregard of the rule has been made the basis of rejecting the defense in cases presenting such widely varied practices as . . . using gasoline for cleaning. . . ." 1A Larson, Workmen's Compensation Law § 33.30 (1973).

In *Parsons v. Swift & Co.*, 234 N.C. 580, 68 S.E. 2d 196 (1951), the deceased employee was employed to haul filler in a wheelbarrow at his employer's fertilizer plant. He was killed while attempting to move a tractor on the employer's premises. The employer had established a rule that no one should operate the tractors except those employees specifically directed to do so. The deceased was not specifically directed to drive the tractor. However, he had moved tractors under similar circumstances on previous occasions, as had other employees who were not specifically directed to operate tractors. We held the injury to be compensable even though the deceased had violated his employer's rule. See *Riddick v. Cedar Works*, 227 N.C. 647, 43 S.E. 2d 850 (1947).

In present case, the Chief of the Wilmington Fire Department stated: "We allow a man to do minor things to his automobile—no big overhaul—and he is supposed to get permission

to do anything of any degree. But to check his tires, check his oil, the battery or some minor thing during a lunch period, we don't have any objection to him doing that."

Captain Rhodes of the Wilmington Fire Department stated: "During the lunch hour firemen who are on duty, if they wish, are allowed to check their automobiles, but as far as doing any work on them they are not allowed to do any work on them. They are not allowed to do any *major work. It would be all right to do some little incidental thing.*" (Emphasis added.)

[3] In the case at bar there was competent evidence to support the hearing commissioner's findings adopted by the Commission that plaintiff was required by his employer to remain at the fire station during his entire twenty-four-hour tour of duty, that firemen often made minor repairs to their automobiles on the fire station premises during their lunch hour, and that this practice was well known to and was allowed by plaintiff's superiors. There was further competent evidence to support a finding that repairs of a minor nature to personal automobiles were to an appreciable extent a benefit to the fire department in that by keeping their automobiles in working condition the firemen could use them to report to duty when they were off duty in the event of an emergency, and also to support the finding that plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant employer on 18 October 1973. Such findings are conclusive on appeal. *Lee v. Henderson & Associates, supra; Stubblefield v. Construction Co., supra; Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760 (1950) ; *Brown v. Aluminum Co.*, 224 N.C. 766, 32 S.E. 2d 320 (1944)'.

We hold, therefore, that plaintiff's act in assisting in the cleaning of the oil breather cap from a fellow employee's car during the lunch period was a reasonable activity, and that the risk inherent in such activity was a risk of the employment. This reasonableness is attested by the fact that such practice was well known to plaintiff's superiors who made no objection but, in fact, specifically allowed firemen to make such minor repairs during their lunch hour.

Other assignments of error have been considered and are without merit.

For the reasons stated, the decision of the Court of Appeals is affirmed.

Affirmed.