ROBERT NORTON, JR., PLAINTIFF v. WASTE MANAGEMENT, INC., EMPLOYER; AND CNA INSURANCE COMPANY, CARRIER, DEFENDANTS

COA00-1024

(Filed 2 October 2001)

**1. Workers' Compensation— findings—supported by competent evidence**

There was competent evidence in a workers' compensation action to support findings that plaintiff was sprayed by sewage as he was unloading a pump truck.

**2. Workers' Compensation— chronic fatigue syndrome—causation—expert testimony**

There was competent and sufficient evidence in a workers' compensation action to support the Commission's finding that being sprayed with raw sewage caused plaintiff's chronic fatigue syndrome in medical testimony from the director of a facility specializing in the research, evaluation and treatment of chronic fatigue syndrome. The witness had previously worked with the Centers for Disease Control and the National Institute of Health in developing definitions for chronic fatigue syndrome and based his diagnosis here on a physical examination of plaintiff and a comprehensive review of his medical history.

Appeal by defendants from an Opinion and Award entered 20 March 2000 by the North Carolina Industrial Commission. Heard in the Court of Appeals 15 August 2001.

*The Anderson Law Firm, P.L.L.C., by Richard J. Hollar, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Maura K. Gavigan and Jennifer S. Jerzak, for defendants-appellants.*

NORTON v. WASTE MGMT., INC.

[146 N.C. App. 409 (2001)]

WYNN, Judge.

Waste Management and CNA Insurance Company appeal the North Carolina Industrial Commission's decision that Robert D. Norton developed chronic fatigue syndrome and fibromyalgia as a result of injury by accident arising out of and in the course of his employment on 4 April 1995. We uphold the decision.

As a tank truck operator for Waste Management, Mr. Norton collected and transported raw sewage. While pumping sewage from his truck on 4 April 1995, Mr. Norton was sprayed with raw sewage which caused abrasions to his arms and stomach. A piece of wire pierced him and the raw sewage sprayed into his eyes and mouth. He reported the incident to his supervisor. Over the next two to three weeks, Mr. Norton suffered flu-like symptoms including nausea, vomiting, diarrhea, severe pressure headaches, stiff neck, swollen lymph nodes and blood in the urine. Several medical care providers treated him.

In May and June 1995, Mr. Norton visited Dr. Gary Ross complaining of "facial pressure, cough, congestion, hematuria, [blood in the urine] and chest pain since being sprayed with raw sewage while working on a septic tank." Dr. Ross noted that Mr. Norton's "urinalysis confirmed hematuria and his examination was consistent with purulent sinusitis."

In June 1995, Dr. Paul Kamitsuka, an infectious disease expert treated Mr. Norton and diagnosed him with chronic fatigue syndrome and fibromyalgia. Dr. Kamitsuka could not determine the etiology of Mr. Norton's condition but he did not rule out the 4 April 1995 incident as the cause of Mr. Norton's injury.

Likewise, Dr. Ralph Corey, an infectious disease expert and associate professor at Duke University Medical Center, examined Mr. Norton but was unable to determine a definitive cause of his condition; however, he did not rule out the 4 April 1995 incident as the cause of his injury. In a letter dated 2 August 1996, Dr. Corey wrote:

> Mr. Norton has a history of chronic psoriasis, [and was] treated previously with methotrexate, he was in fairly good health and working until he was sprayed in the face, abdomen, and arms with septic affluence in April of 1995. The week after this, his symptoms of chronic fatigue, headaches, diarrhea, and abdominal pain developed. Though they have waxed and waned, they have not completely abated since April of 1995.

NORTON v. WASTE MGMT., INC.

[146 N.C. App. 409 (2001)]

In July 1996, Dr. Woodhall Stopford, a specialist in occupational diseases, evaluated Mr. Norton and noted that "his symptoms included diarrhea, projectile vomiting, persistent fatigue, and perspiration whenever he tries to do physical activities." He assessed that Mr. Norton had "accidental sewage exposure by skin abrasions, puncture wound, and by mouth" and "persistent fatigue."

In December 1997, Mr. Norton was examined by Dr. Charles Lapp, who diagnosed Mr. Norton as suffering from chronic fatigue syndrome and fibromyalgia. Dr. Norton testified that it was his opinion to a reasonable degree of medical certainty that Mr. Norton's chronic fatigue syndrome and fibromyalgia were caused by the industrial accident in April 1995.

Following a deputy commissioner's opinion that Mr. Norton had not sustained an occupational disease as a result of his injury by accident, the full Commission unanimously reversed by concluding that:

1.  Plaintiff experienced a compensable injury by accident arising out of and in the course of the employment on 4 April 1995. N.C. Gen. Stat. § 97-2(6).

2.  As a result of the injury by accident which occurred on or about April 4, 1995, plaintiff suffers from chronic fatigue syndrome and fibromyalgia. Id.

3.  The plaintiff is entitled to permanent disability compensation at the rate of $384.02 per week, since he is unable to earn wages because of his compensable chronic fatigue syndrome and fibromyalgia. N.C. Gen. Stat. § 97-29.

4. Plaintiff is entitled to payment by defendant of all medical expenses incurred as a result of his April 4, 1995, injury by accident to the extent that the same are reasonably required to effect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25.

From that Opinion and Award, Waste Management and CNA Insurance Company appeal to this Court.

The issues on appeal are: (I) Whether there was competent evidence from which the full Commission could find that Mr. Norton suffered a compensable injury and (II) whether the accident caused Mr. Norton's chronic fatigue syndrome.

NORTON v. WASTE MGMT., INC.

[146 N.C. App. 409 (2001)]

"The Commission is the fact-finding body under the Workmen's Compensation Act." *Watkins v. City of Wilmington*, 290 N.C. 276, 280, 225 S.E.2d 577, 580 (1976). We review the full Commission's Opinion and Award to determine if the record shows any competent evidence to support the Commission's findings of fact; and if so, whether the conclusions of law are supported by those findings. *See Barham v. Food World, Inc.*, 300 N.C. 329, 266 S.E.2d 676 (1980); *Lowe v. BE&K Construct.*, 121 N.C. App. 570, 468 S.E.2d 396 (1996).

[1] First, Waste Management and CNA Insurance Company argue that Mr. Norton failed to present any competent evidence that his contact with the sewage caused him injury. We disagree because at the deputy commissioner's hearing, all parties stipulated that,

> on or about April 4 1995, the plaintiff was employed as a truck driver with the defendant-employer, at which time he was sprayed with raw sewage from a pressurized valve. The plaintiff was acting within the course of employment at the time of the incident, and he sustained abrasions to his arm and stomach as a result of this accident.

Furthermore, testimonial evidence showed that on 4 April 1995, Mr. Norton unloaded raw sewage in the course and scope of his employment; sustained injuries; ingested raw sewage through his mouth and eyes; sustained abrasions on his arms; and suffered a puncture wound to his stomach. Indeed, there is competent evidence to support the following findings of facts:

> 3. The plaintiff began working for the defendant-employer in 1993. He drove the pump truck, dug up septic tanks, opened the tanks, pumped out the tanks and sealed it. He also pumped out grease traps at restaurants and portable toilets.

> 4. On April 4 1995, the plaintiff was carrying a load of grease, septic tank and portable toilet sewage. As he began to off-load the truck, the plaintiff was sprayed in the face, chest and arm by the sewage. He rinsed off with the contents of his tea jug.

> 5. Plaintiff reported being sprayed by sewage to his employer, who offered to send him to a doctor. Plaintiff sustained abrasions to his arms, a small puncture wound from a piece of wire and the spraying of the sewage mixture into his eyes and mouth. Plaintiff went home to clean himself and treat his injuries.

Therefore, this assignment of error is without merit.

[2] In their final argument, Waste Management and CNA Insurance Company contend that there was no competent evidence to show that the accident caused Mr. Norton's chronic fatigue syndrome.[1] We disagree.

"Whether the full Commission conducts a hearing or reviews a cold record, N.C.G.S. § 97-85 places the ultimate fact-finding function with the Commission—not the hearing officer. It is the Commission that ultimately determines credibility, whether from a cold record or from live testimony." *Deese v. Champion Int'l. Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000). "[I]n reversing the deputy commissioner's credibility findings, the full Commission is not required to demonstrate . . . 'that sufficient consideration was paid to the fact that credibility may be best judged by a first-hand observer of the witness when that observation was the only one.'" *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 413 (1998) (quoting *Sanders v. Broyhill Furniture Indus.*, 124 N.C. App. 637, 641, 478 S.E.2d 223, 226 (1996)).

Thus, on appeal, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams v. AVX Corp.*, 349 N.C. at 681, 509 S.E.2d at 414.

In the present case, the Commission made the following relevant findings of facts:

6. The plaintiff went to work the next day [after the accident] and pumped two jobs, but then went home because of pain in his arm. The plaintiff began developing flu-like symptoms in the following weeks, but thought he was just coming down with the flu since his abdomen and arm were beginning to heal. Plaintiff tried to work through it thinking it would get better, but his symptoms continued to get worse. Plaintiff began to experience nausea, vomiting, diarrhea, and severe pressure headaches. The plaintiff sought medical treatment from Dr. Gary Ross due to his symptoms continuing to worsen.

---

1. The defendants do not challenge in their appeal the Commission's conclusion that the accident caused Mr. Norton's fibromyalgia.

7. The office notes from the May 22, 1995 office visit with Dr. Ross state that, "the patient came in complaining of facial pressure, cough, congestion, hematuria, and chest pain since being sprayed with sewage while working in a septic tank. His urinalysis confirmed hematuria and his examination was consistent with purulent sinusitus."

8. Plaintiff returned to Dr. Ross on May 31, 1995 and June 12, 1995 with complaints of myalgias and lethargy, in addition to the symptoms.

9. In June 1995, plaintiff saw Dr. Paul Kamitsuka, an infectious disease expert in Wilmington, North Carolina. Dr. Kamitsuka's notes of June 27, 1995 state that, "Mr. Norton presents for f/u a day earlier because of symptoms of nausea and several episodes of vomiting two days ago with persistent fatigue. He has had no fever. Has had continued watery diarrhea." Dr. Kamitsuka diagnosed plaintiff with chronic fatigue syndrome and fibromyalgia, but stated that he was unable to determine the etiology. Dr. Kamitsuka also stated that he could not rule out the April 4, 1995 accident as the cause of plaintiff's condition.

10. Dr. Ralph Corey, associate professor of medicine and infectious diseases at Duke University, saw plaintiff and was unable to determine the etiology of plaintiff's condition. In an August 2, 1996 letter, Dr. Corey related that, "Though (plaintiff) has a history of chronic psoriasis, treated previously with methotrexate, he was in fairly good health and working until he was sprayed in the face, abdomen, and arms with septic system effluence in April of 1995. The week after this, his symptoms of chronic fatigue, headaches, diarrhea, and abdominal pain developed. Though they have waxed and waned, they have not completely abated since April of 1995."

[The full Commission's findings of facts skipped from number 10 to number 13].

13. Plaintiff was seen on December 16, 1997 by Dr. Charles Lapp, director of the Hunter-Hopkins Center in Charlotte, North Carolina, which is a facility specializing in the research, evaluation, and treatment of chronic fatigue syndrome and fibromyalgia. Dr. Lapp, who is internationally regarded as an expert in this area, diagnosed the plaintiff as suffering from chronic fatigue syndrome and fibromyalgia. Dr. Lapp noted that the plaintiff had all

18 of the tender points associated with fibromyalgia.

14. Dr. Lapp also testified that to diagnose chronic fatigue syndrome, one must follow the Center for Disease Control criteria which requires taking a medical history, establishing the patient has had fatigue for at least four of the eight typical symptoms of chronic fatigue syndrome as established by the Center for Disease Control. Dr. Lapp testified, and the Full Commission finds as fact, that the plaintiff has met the criteria as set forth above for diagnosis of chronic fatigue syndrome.

15. When asked about causation, Dr. Lapp testified and the Full Commission finds as fact that, "there was no evidence in medical records prior to that accident that he was having the kind of symptoms that developed following the accident. And as you know, the accident was associated with significant viral-like illness with high fevers, infections, diarrhea, vomiting, and he just never recovered from that. So, from a causative standpoint or temporal standpoint, I think that the industrial accident appeared to be the cause of the chronic fatigue syndrome."

16. Dr. Lapp, in his 12/9/97 independent medical examination of the plaintiff states that, "The subject is unable to even perform sedentary work for more than a few minutes without prolonged rest, and even mild to moderate activity on a regular basis is out of the question. He would have difficulty dealing with other workers due to irritability, and would perform poorly under even minimal stresses. He is able to manage his own finances, but due to cognitive problems he would not be reliable to handle mathematical problems or money in business. Based on my considerable experience with CFS/FM and epidemiological data from CDC, it is medically certain that this condition would not improve significantly in the next twelve months."

The record shows that Mr. Norton was examined by Dr. Charles Lapp, the Director of the Hunter-Hopkins Center in Charlotte, North Carolina—a facility that specializes in the research, evaluation and treatment of chronic fatigue syndrome. Dr. Lapp serves as a member of the American Association for Chronic Fatigue Syndrome and has previously worked with the Centers for Disease Control and National Institute of Health in developing definitions for chronic fatigue syndrome. Dr. Lapp's diagnosis of chronic fatigue syndrome was based in part on his physical examination of Mr. Norton and comprehensive review of Mr. Norton's medical history. He testified that Mr. Norton

met the 1994 criteria for chronic fatigue syndrome as established by the Center for Disease Control and 1990 criteria established by the American College of Rheumatology. Dr. Lapp pointed out in his deposition that approximately seventy to eighty percent of chronic fatigue syndrome cases have a specific flu-like beginning, five percent of other cases occur after a traumatic event, another five percent follow surgery, and two percent follow severe stress. He concluded that Mr. Norton actually experienced a trauma at the time of the accident and a flu-like illness immediately following the accident. Significantly, at his deposition, Dr. Lapp testified as follows:

> Q. Dr. Lapp, . . . Is it your opinion that Mr. Norton's chronic fatigue syndrome was caused by his industrial accident?
>
> A. Yes, sir.
>
> Q. The opinion you have rendered to us previously as to the cause of Mr. Norton's chronic fatigue syndrome, is that your opinion to a reasonable degree of medical certainty?
>
> A. Yes, sir, it is.

Most assuredly, Dr. Lapp's expert testimony satisfies the concerns of our Supreme Court in *Young v. Hickory Business Furn.*, 353 N.C. 227, 538 S.E.2d 912, 915 (2000), regarding speculative and conjectural causal evidence. Unlike the medical expert in *Young*, Dr. Lapp's testimony unequivocally demonstrated his ability to express an opinion to a reasonable degree of medical certainty as to the cause of Mr. Norton's illness. We therefore hold that this evidence, was competent and sufficient to support the Commission's findings of fact. Accordingly, the Opinion and Award of the Commission is,

Affirmed.

Judges HUNTER and TYSON concur.