***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction of this claim and the subject matter.
2. At all times relevant to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At the time of plaintiff's alleged injury of June 4, 2002, an employer/employee relationship existed between defendant-employer and plaintiff.
4. Defendant-Employer is self-insured with Chesterfield Services, Inc., serving as Servicing Agent.
5. Plaintiff's average weekly wage will be determined by a Form 22.
6. The parties entered the following into the evidence of record at the hearing before the Deputy Commissioner:
(a) Stipulated Exhibit #1 — medical records
(b) Stipulated Exhibit #2 — Form 22
(c) Plaintiff's Exhibit #1 — Form 18
(d) Plaintiff's Exhibit #2 — Form 22
(e) Defendant's Exhibit #3 — plaintiff's 2002 annual review
7. The Pre-Trial Agreement entered into by the parties is approved and incorporated by reference herein.
8. The issues before the Commission are whether plaintiff suffered an injury by accident on June 4, 2002, and if so, to what compensation and other benefits is plaintiff entitled?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 46 years of age, having a date of birth of February 9, 1957. Plaintiff completed the eleventh grade but did not graduate or receive a high school diploma.
2. Plaintiff farmed for many years until he began working in the logging industry. Plaintiff was employed in logging for approximately eight to ten years. Plaintiff operated his own logging company for approximately four of those years.
3. Plaintiff began working with the defendant in approximately 1998. He remained employed with defendant full time until October of 2002, except for a brief period when he worked part time and worked for attorney Pat Smathers performing maintenance work part time. Plaintiff's job duties with defendant included truck driving, maintenance, cleaning, lawn care, and loading and unloading donations and items sold in the Salvation Army thrift store.
4. Plaintiff was engaged in his regular duties on June 4, 2002 when he was asked to load a refrigerator onto a trailer for a customer. The refrigerator weighted a great deal more than most of the refrigerators that were usually sold at defendant's thrift store. Plaintiff testified that on June 4, 2002 when he was loading the refrigerator onto the customer's trailer he felt a pain in his back.
5. Plaintiff had lunch on June 4, 2002 with a coworker and discussed loading the refrigerator by himself, but did not specifically discuss hurting his back.
6. On June 5, 2002, when plaintiff woke up he was in a great deal of pain. He telephoned his supervisor, Betty Sisson, at around 9:30 a.m. to report he had been injured at work the day before and needed to seek medical treatment.
7. Plaintiff sought treatment at the Urgent Care Center in Haywood County on June 5, 2002. Plaintiff reported that he had injured his back at work the day before loading a refrigerator onto a trailer. Plaintiff was diagnosed with lumbar strain and given restrictions of no lifting over ten pounds and no excessive bending.
8. Plaintiff took the work note to defendant who told plaintiff they did not have work available within his restrictions. Defendant paid plaintiff for the July 4th holiday, gave him two $50.00 food coupons, and paid plaintiff's electric bill.
9. Plaintiff's workers' compensation claim was denied by defendant.
10. Plaintiff was referred by the Urgent Care Center to Dr. Albert Osbahr, who practiced occupational medicine. Plaintiff sought treatment with Dr. Osbahr on June 10, 2002. Plaintiff reported to Dr. Osbahr that he had injured his back loading a refrigerator at work. Dr. Osbahr prescribed plaintiff muscle relaxers and told plaintiff he should continue taking the Vicodin prescribed by the Urgent Care Center.
11. Plaintiff returned to see Dr. Osbahr on June 13, 2002 with continued complaints of back pain.
12. When plaintiff's workers' compensation claim was denied by defendant, Dr. Osbahr referred plaintiff to his regular physician, Dr. Michael Goebel, for continued treatment.
13. Dr. Osbahr had treated plaintiff in 1999, one time for an injury to his back while working for a different employer. Plaintiff's previous injury had only required one visit for treatment and plaintiff sought no treatment for back related symptoms from 1999 to 2002.
14. Dr. Michael Goebel, an orthopedic surgeon, saw plaintiff on July 1, 2002. Dr. Goebel prescribed Darvocet and gave plaintiff light duty work restrictions with no lifting more than ten pounds, as well as no bending, twisting or turning. Dr. Goebel recommended plaintiff undergo an MRI, which Dr. Goebel interpreted later as normal.
15. Because plaintiff continued to experience additional symptoms, Dr. Goebel recommended plaintiff have a epidural steroid injection on September 23, 2002.
16. Plaintiff was last seen by Dr. Goebel on October 24, 2002. At that time, plaintiff continued to experience intermittent numbness in both extremities.
17. Dr. Goebel never revised plaintiff's work restrictions and did not release plaintiff to return to unrestricted work.
18. Plaintiff continued to communicate with defendant about his status and work restrictions. Defendant continued to have no work available within plaintiff's restrictions.
19. Plaintiff began treating with Dr. Laura Fleck, a neurologist, on January 30, 2003.
20. Plaintiff reported to Dr. Fleck being injured at work loading a refrigerator for a customer onto a trailer. Plaintiff was experiencing an onset of low back pain, which had moved into both legs.
21. Dr. Fleck characterized plaintiff's tests as consistent and diagnosed plaintiff as suffering from mechanical low back pain stemming from the facet of joints and superimposed myofascial findings.
22. Dr. Fleck felt plaintiff's description of his injury was consistent with his symptoms.
23. Dr. Fleck gave plaintiff work restrictions of no lifting over 20 pounds, no excess bending, no lifting above his knees or over his shoulders, no prolonged standing, walking, no climbing, or work at shoulder level.
24. Dr. Fleck continued to treat plaintiff through the time of Dr. Fleck's deposition, May 28, 2003.
25. Dr. Fleck continued to recommend plaintiff remain on light duty work on May 28, 2003.
26. Defendant denied plaintiff's claim asserting plaintiff was unhappy with a job performance review he received on May 22, 2002. Plaintiff had met with one of his supervisors, Major Sherman Cundiff, on May 28, 2002 to discuss defendant's decision to close the greenhouse, a part of plaintiff's job that he enjoyed. Plaintiff testified he was not unhappy with his job review, and that in fact, he had received a raise.
27. Defendant offered the testimony of Ms. Carolyn Ann Henry who purchased a refrigerator from defendant's store on an unspecified date in the summer of 2002. Ms. Henry observed plaintiff loading the refrigerator onto her trailer. Ms. Henry did not recall plaintiff complaining of any pain when he loaded the refrigerator. Ms. Henry's testimony did not establish that it was the same refrigerator and it was plaintiff's testimony that in fact it was not.
28. The Full Commission rejects the finding of the Deputy Commissioner that plaintiff's testimony is not credible. Plaintiff reported his injury the next day to defendant, and reported the injury to each of his physicians. There is no dispute that a very heavy refrigerator was in fact sold on June 4, 2002 or that plaintiff loaded it by himself. Plaintiff had been employed for several years by defendant and there was no credible evidence presented that the events did not occur as plaintiff testified.
29. Based upon the greater weight of the credible evidence of record, the Full Commission finds the testimony of plaintiff to be credible.
30. Based upon the greater weight of the credible evidence of record, the Full Commission finds that plaintiff suffered an injury by accident in the regular course and scope of his employment on June 4, 2002.
31. Plaintiff had not presented evidence of a permanent impairment rating and that issue is not addressed in this award.
32. Plaintiff's average weekly wage according to the Form 22 submitted by defendant was $354.22, which yields a compensation rate of $236.16.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident or specific traumatic incident on or about June 4, 2002 in the course and scope of his employment with Defendants. N.C. Gen. Stat. § 97-2(6). Plaintiff has the burden of providing disability, defined as a loss of wage earning capacity. Russell v. Lowe's Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). Plaintiff can satisfy his burden of proving disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of working in any employment; (2) the production of evidence that he is capable of some work, but that he has, after reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, i.e. age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than he earned prior to his injury. Id.
2. Through the production of medical evidence that his pain is genuine and his own credible testimony regarding his pain, symptoms and abilities, plaintiff has proven that he is physically incapable of any employment as a consequence of his compensable injury by accident. Plaintiff has also shown that even if he were capable of some sedentary work, it would be futile for him to engage in a job search in light of his age, lack of work experience, lack of training and education, lack of transferable skills and physical impairment. Plaintiff has satisfied his burden of proving he has been unable to work as a result of his injury by accident from June 4, 2002 and continuing through the present date until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Defendant has failed to present competent, credible evidence to rebut plaintiff's presumption of disability. Defendant has the burden to show not only that suitable jobs are available, but also that plaintiff is capable of getting a job taking into account his physical and vocational limitations. Kennedy v. Duke University Medical Center,101 N.C. App. 24, 398 S.E.2d 677 (1990). Defendant has failed to meet this burden and plaintiff is therefore entitled to ongoing disability benefits.
4. As the result of his June 4, 2002 injury by accident, plaintiff is entitled have defendant pay for all related medical expenses as may be required to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. § 97-25.
5. The Full Commission may reject the finding of fact found by the hearing commissioner, and is the ultimate finder of fact. Watkins v. TheCity of Wilmington, 290 N.C. 276, 225 S.E.2d 577 (1976).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation to plaintiff from June 4, 2002 and continuing until further order of the Commission or plaintiff returns to full time employment at or above his average weekly wage he was making on June 4, 2002 in the amount of $236.16 per week. Any amounts that have accrued shall be paid in a lump sum subject to the attorney fee ordered below.
2. Defendants shall pay all medical expensed incurred by plaintiff or to be incurred as a result of his compensable injury.
3. The issue of permanent partial impairment benefit is reserved for a future proceeding, as no testimony was presented as to whether plaintiff was at maximum medical improvement.
4. A reasonable attorney of 25% of the compensation due under this Opinion and Award is approved for plaintiff's attorney. Of the lump sum that has accrued, defendant shall pay 25% of that sum directly to plaintiff's attorney and thereafter, every fourth check shall be paid directly to plaintiff's attorney.
5. Defendant shall pay all costs of this proceeding including expert witness fees and costs due the Commission.
This the ___ day of May 2004.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CS/kjd