***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 *********** DEFENDANTS' MOTIONS TO ADMIT ADDITIONAL EVIDENCE
Defendants moved to include in the record Defendants' Verified Motion to Amend Pre-Trial Agreement and Plaintiff's Verified Response to Defendants' Motion to Amend the Pre-Trial Agreement, as well as Defendants' Motion for Reconsideration, all of which came on for *Page 2 
hearing before the Deputy Commissioner. Plaintiff did not submit a written response or objection to Defendants' Motions. After consideration of the written arguments of Defendants, Defendants' Motions are hereby GRANTED. Accordingly, Defendants' Verified Motion to Amend Pre-Trial Agreement, Plaintiff's Verified Response to Defendants' Motion to Amend the Pre-Trial Agreement, and Defendants' Motion for Reconsideration, attached as an exhibit to Defendants' Brief to the Full Commission, shall be attached to the end of the transcript after page 256.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
2. Plaintiff is Charlie Tharrington.
3. Defendant-Employer is Wal-Mart Stores, Inc.
4. Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer at the time of the alleged injuries.
5. Defendant-Employer regularly employs three (3) or more employees, and is bound by the provisions of the North Carolina Workers' Compensation Act. An employment relationship existed between the parties on November 19, 2006, the date of injury.
6. Plaintiff's compensation rate is $730.00, which is the maximum compensation rate for the year 2006. *Page 3 
7. Plaintiff claims that he last worked on November 19, 2006.
8. Defendants have been paying Plaintiff compensation at the rate of $730.00 per week since November 21, 2006.
9. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — Pre-trial Agreement;
 b. Stipulated Exhibit Two (2) — Various documents, including:
 i. Plaintiff's emergency medical services records;
 ii. Plaintiff's medical records from McLeod Medical Center Dillon;
 iii. Plaintiff's medical records from U.S. Health Works Medical Group;
 iv. Plaintiff's medical records from Central Carolina Physical Therapy;
 v. Plaintiff's medical records from Raleigh Radiology;
 vi. Plaintiff's medical records from Carolina Back Institute;
 vii. Plaintiff's medical records from Raleigh Center for Neurosurgery and Neurosciences, P.A.;
 viii. Plaintiff's medical records from Southeastern Imaging Consultants of Cary, L.L.C.;
 ix. Additional medical records of Plaintiff from Raleigh Radiology;
 x. Plaintiff's medical records from Orthopedic Specialists of North Carolina; *Page 4 
 xi. Plaintiff's medical records from Franklin Regional Medical Center;
 xii. Plaintiff's medical records from Duke University Medical Center;
 xiii. Plaintiff's medical records from Orthopedic Surgery of the Foot and Ankle, P.A.;
 xiv. Undated "Letter of Necessity for Roll-A-Bout" form signed by Dr. Mark Erik Easley;
 xv. North Carolina Industrial Commission forms and filings;
 xvi. Accident reports from the November 19, 2006 motor vehicle accident;
 xvii. Order of Deputy Commissioner Myra L. Griffin dated November 19, 2008;
 xviii. Correspondence from counsel for Defendants to counsel for Plaintiff dated January 9, 2009 with attachments;
 xix. Correspondence from counsel for Plaintiff to counsel for Defendants dated January 8, 2009;
 xx. Correspondence from counsel for Defendants to counsel for Plaintiff dated January 13, 2009;
 xxi. Plaintiff's medical records from Franklin Regional Therapy Center.
 *********** ISSUES
The issues to be determined are: *Page 5 
1. Whether Plaintiff's claim for workers' compensation benefits associated with his right knee complaints should be precluded in light of his decision to proceed with right total knee replacement surgery despite Defendants' request that he undergo an independent medical examination prior to said surgery?
2. Whether Plaintiff's right knee complaints are causally related to its overuse following his November 19, 2006 work injury to his ankle, and if so, to what workers' compensation benefits is he entitled?
3. Whether the parties withdrew stipulation number six (6) of the Pre-trial Agreement at the hearing before the Deputy Commissioner?
4. Whether the issues determined by the Deputy Commissioner are inconsistent with the issues presented by the parties in the Pre-trial Agreement?
5. Whether Defendants' Verified Motion to Amend Pre-Trial Agreement and Defendants' Motion for Reconsideration should have been denied?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 66 years old, with a date of birth of February 9, 1943. Plaintiff attended high school through the 10th grade, and thereafter, served in the United States National Guard for one and one-half (1½) years. Prior to working as a truck driver, Plaintiff attended barbers' school, but did not complete this training. Plaintiff has a certified driving license (CDL), and the vast majority of his work history prior to his employment with Defendant-Employer *Page 6 
consisted of commercial truck driving. Plaintiff's employment with Defendant-Employer involved both short-haul and long-haul truck driving.
2. On November 19, 2006, Plaintiff was working for Defendant-Employer as a truck driver when he saw lights shining across some fields along a highway in South Carolina and maneuvered his truck into the left lane. Suddenly, Plaintiff noticed that an overturned 18 wheel truck was blocking the roadway. Because the top of the 18 wheel truck was facing Plaintiff, there were no running lights visible to alert him of the truck's location, and although he applied his brakes, Plaintiff's truck impacted the top of the other truck with the amount of force Plaintiff compared to impacting a brick wall. Shortly after impacting the 18 wheel truck, emergency medical personnel transported Plaintiff to McLeod Medical Center Dillon in Dillon, South Carolina, where he received diagnoses of low back and left hip strains.
3. On November 20, 2006, Plaintiff sought treatment at the direction of Defendants from U.S. Health Works Medical Group, which referred him to physical therapy. A November 27, 2006 note from U.S. Health Works Medical Group stated that Plaintiff was experiencing left foot numbness, and a December 19, 2006 note stated that he was experiencing numbness in the toes of his left foot and had an abnormal gait. As a result of Plaintiff's complaints of numbness in his left lower extremity, he received an orthopaedic referral.
4. Plaintiff asserted in his Form 18 that as a result of his November 19, 2006 work injury, he sustained injuries to his back, left hip, leg, and ankle, as well as bilateral weakness below waist level. Defendants accepted the compensability of Plaintiff's November 19, 2006 workers' compensation claim via a Form 60 dated November 29, 2006, and described Plaintiff's injuries as "sprain lumbar region, sciatica." At the time Defendants filed the Form 60, Plaintiff *Page 7 
had diagnoses of "low back and left hip strains," and his left foot numbness and other left lower extremity problems were just beginning to become symptomatic.
5. On January 22, 2007, Plaintiff sought treatment from Dr. Michael Dale Gwinn, a pain management specialist, at which time Plaintiff reported experiencing low back and left leg pain radiating down his left leg with numbness. Dr. Gwinn diagnosed Plaintiff with mechanical low back pain with possible left lumbar radiculopathy, as well as myofascial pain with trigger points. Dr. Gwinn began Plaintiff on a program of trigger point injections, epidural steroid injections, physical therapy, and prescription medications.
6. On March 5, 2007, Plaintiff saw Dr. Gwinn again, at which time he complained of lower back pain and increased pain and swelling in his left ankle. Dr. Gwinn concluded that previous electromyography testing (EMG) ruled out lumbar radiculopathy, but that an x-ray revealed a small posterior plantar calcaneal spur and a small exostosis of the superior posterior aspect of the calcaneus. In addition, Dr. Gwinn noted that Plaintiff had edema of the left ankle. On April 11, 2007, Dr. Gwinn recommended that Plaintiff obtain a surgical consultation.
7. On April 13, 2007, Plaintiff presented to Dr. Robert Lacin, a neurosurgeon, at which time he complained of left foot and lower back pain. Dr. Lacin referred Plaintiff back to Dr. Gwinn with recommendations for additional treatment. Dr. Lacin was of the opinion that Plaintiff was not a surgical candidate at that time.
8. On May 7, 2007, Plaintiff returned to Dr. Gwinn with complaints of ongoing lower back, left foot, ankle, and leg pain, as well as right leg weakness. In addition to administering trigger point injections for Plaintiff's lower back pain, Dr. Gwinn also ordered a bone scan, the results of which revealed abnormalities in the left ankle, and left ankle magnetic resonance imaging (MRI), which revealed degenerative changes and subluxation at the sub-talar *Page 8 
joint, joint effusions, a partial tear/tendonitis of the Achilles tendon, a partial tear/tendonitis of the peroneal tendons, and mild tenosynovitis at the tibialis posterior and flexor digitorum longus tendons. Dr. Gwinn diagnosed Plaintiff with left ankle osteoarthritis and tendonitis, exacerbated by the November 19, 2006 work injury. Dr. Gwinn referred Plaintiff to Dr. Clifford Robert Wheeless, III, an orthopaedic surgeon.
9. On September 26, 2007, Plaintiff presented to Dr. Wheeless with complaints of lower back, joint, and left hand and ankle pain following his November 19, 2006 work injury. Dr. Wheeless' physical examination of Plaintiff revealed anterior joint line tenderness, tenderness to forced flexion, and inversion of the left ankle. Dr. Wheeless prescribed medications and a steroid injection.
10. On October 23, 2007, Plaintiff returned to Dr. Gwinn in connection with his continued complaints of lower back pain. Dr. Gwinn diagnosed Plaintiff with lower back pain with a history of disc herniation at the L4-L5 level of the spine, and assigned a 10 percent permanent partial disability rating to his back. In addition, Dr. Gwinn issued Plaintiff permanent work restrictions of no lifting more than 15 pounds, and avoiding repetitive kneeling, bending, crawling, and squatting.
11. On November 21, 2007, Plaintiff returned to Dr. Wheeless with continued complaints of left ankle and right knee pain. On December 21, 2007, Dr. Wheeless referred Plaintiff to Dr. Mark Erik Easley, an orthopaedic surgeon, for his continued complaints of left ankle and right knee pain. On February 29, 2008, Plaintiff saw Dr. Wheeless for the last time, and he recommended another MRI of Plaintiff's left ankle.
12. On March 5, 2008, Plaintiff presented to Dr. Easley, at which time he reported a history of sustaining a left ankle injury in connection with his November 19, 2006 work injury. *Page 9 
Dr. Easley diagnosed Plaintiff with post-traumatic left-sided sub-talar joint arthritis with lateral subluxation. Dr. Easley also ordered a computed tomography (CT) scan, which confirmed his diagnoses. On May 19, 2008, Dr. Easley performed a sub-talar joint fusion surgery on Plaintiff.
13. Following Plaintiff's May 19, 2008 surgery, Dr. Easley put him on a protected weight-bearing status, which put additional weight and pressure on Plaintiff's right leg in order to protect his left ankle. As a result of this protected weight-bearing status, Plaintiff experienced increased right knee pain over time. An x-ray of Plaintiff's right knee demonstrated a complete loss of the medial joint space and some mal-alignment, for which Dr. Easley administered an injection and ultimately recommended a right total knee replacement surgery.
14. Thereafter, Plaintiff requested that Defendants authorize the right total knee replacement surgery recommended by Dr. Easley; however, Defendants denied this request. On November 6, 2008, Plaintiff filed a Form 33 concerning authorization of the right total knee replacement surgery recommended by Dr. Easley, and the North Carolina Industrial Commission referred the matter to its expedited medical motion process. On November 19, 2008, Deputy Commissioner Myra L. Griffin filed an Order authorizing Defendants to "schedule an IME with a physician of their selection within 3 weeks from the date of this order." On December 11, 2008, Defendants notified Plaintiff via facsimile that they scheduled an independent medical examination for January 14, 2009 with Dr. James Gregory Nelson, an orthopaedist. The date of Defendants' facsimile to Plaintiff falls outside the timeline Ordered by Deputy Commissioner Griffin, with the last date to comply therewith being December 10, 2008.
15. Prior to Defendants' December 11, 2008 facsimile to Plaintiff, he already scheduled a right total knee replacement surgery for January 9, 2009. Plaintiff offered to have an independent medical examination anytime before the right total knee replacement surgery *Page 10 
scheduled for January 9, 2009. However, Dr. Nelson did not have any available dates prior to January 9, 2009. As a result, Defendants requested that Plaintiff cancel his right total knee replacement surgery scheduled for January 9, 2009. Due to the severity of Plaintiff's pain and the medical necessity of the right total knee replacement surgery scheduled for January 9, 2009, Plaintiff did not want to cancel his surgery and possibly have to wait several more months for another surgical date.
16. On January 9, 2009, Plaintiff underwent a right total knee replacement surgery performed by Dr. Easley. Plaintiff offered to have an independent medical examination after the right total knee replacement surgery, but Defendants did not reschedule an appointment. As of February 25, 2009, Dr. Easley opined, and the Full Commission so finds, that Plaintiff is not at maximum medical improvement with respect to either his right knee or left ankle.
17. The Full Commission finds, based upon the greater weight of the evidence, that since Defendants' facsimile to Plaintiff on December 11, 2008 was not in compliance with Deputy Commissioner Griffin's November 19, 2008 Order that the independent medical examination be scheduled "within 3 weeks from the date of this order," Plaintiff did not violate Deputy Commissioner Griffin's Order or refuse to submit to an independent medical examination by failing to cancel his January 9, 2009 right total knee replacement surgery, and he is not barred from receiving medical compensation in connection with the same.
18. In correspondence dated August 15, 2008, Dr. Wheeless opined that Plaintiff's right knee complaints were due to overuse and strain caused by his left ankle injury. Further, Dr. Wheeless testified that Plaintiff's left ankle injury more likely than not caused his right knee condition due to overuse of the right knee. The Full Commission gives great weight to the opinion testimony of Dr. Wheeless. *Page 11 
19. Dr. Easley opined that Plaintiff's his left ankle injury more likely than not aggravated his pre-existing right knee arthritis due to overuse of the right knee. The Full Commission gives great weight to the opinion testimony of Dr. Easley. Further, the Full Commission finds that Plaintiff's January 9, 2009 right total knee replacement surgery performed by Dr. Easley was reasonably required in order to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability with respect to his November 19, 2006 work injury.
20. Dr. Nelson reviewed Plaintiff's medical records and opined that overuse of Plaintiff's right knee and leg due to his injured left ankle would not have caused or significantly aggravated his right knee arthritis because the overuse occurred over an insufficiently long period of time. Dr. Nelson has never had a patient to develop problems with a "good" leg due to overuse after injury to the other leg. However, Dr. Nelson did agree that trauma can aggravate a pre-existing arthritic condition. The Full Commission gives greater weight to the opinions of Dr. Easley and Dr. Wheeless, since Dr. Nelson never personally examined or treated Plaintiff.
21. The Full Commission finds, based upon the greater weight of the evidence, that great weight should be given to the opinions expressed in Dr. Gwinn's medical records, since he treated Plaintiff over a period of several months in connection with his complaints of lower back, left foot, ankle, and leg pain, as well as right leg weakness. *Page 12 
22. The Full Commission finds, based upon the greater weight of the evidence, that as a result of Plaintiff's November 19, 2006 work injury, he sustained a left ankle injury, which materially aggravated his pre-existing, non-disabling right knee arthritis, requiring a right total knee replacement surgery.
23. The Full Commission finds, based upon the greater weight of the evidence, that as a result of Plaintiff's November 19, 2006 work injury, he was and continues to be unable to earn any wages in any other employment from November 21, 2006 through the present.
24. The Full Commission finds, based upon the greater weight of the evidence, that the parties withdrew stipulation number six (6) of the Pre-trial Agreement at the hearing before the Deputy Commissioner. The Full Commission further finds that the parties stipulated at the hearing before the Deputy Commissioner that Plaintiff's compensation rate is $730.00, which is the maximum compensation rate for the year 2006.
25. The Full Commission finds, based upon the greater weight of the evidence, that the parties did not stipulate in the Pre-trial Agreement to the compensability of Plaintiff's left ankle injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with Defendant-Employer on November 19, 2006 to his lower back, left ankle, and right knee. N.C. Gen. Stat. § 97-2(6) (2008).
2. On November 19, 2006 Plaintiff's average weekly wage was at a level entitling him to the maximum compensation rate for the year 2006 of $730.00. N.C. Gen. Stat. § 97-2(5) (2008).
3. A stipulation takes place between parties to litigation if there is both assent by the parties and certainty as to the terms of the stipulation. State v. Mullican, 95 N.C. App. 27,381 S.E.2d 847 (1989). *Page 13 
In determining whether and to what extent a stipulation between parties to litigation exists, a court is required to consider the circumstances arising at the time of the alleged stipulation in order to give reasonable construction to the alleged stipulation, and to effect the intentions of the parties. Outer BanksContractors, Inc. v. Forbes, 302 N.C. 599, 276 S.E.2d 375 (1981). In the case at bar, there was no intention of the parties to stipulate in the Pre-trial Agreement to the compensability of Plaintiff's left ankle injury. Had there been an intention by both parties to stipulate to the compensability of Plaintiff's left ankle injury in the Pre-trial Agreement, such stipulation should have been expressly stated in the same portion of the Pre-trial Agreement that contains other stipulations, and not in the section containing contested issues to be presented for hearing. Further, the conduct of the parties both prior to and during the hearing before the Deputy Commissioner is not consistent with an intention to stipulate to the compensability of Plaintiff's left ankle injury. Neither Plaintiff's Form 33 initiating this litigation nor Defendants' Form 60 mentioned the left ankle in any way. In addition, Defendants questioned witnesses both in depositions and at the hearing before the Deputy Commissioner extensively concerning the causation of Plaintiff's left ankle injury, without objection from Plaintiff, which is also inconsistent with a stipulation concerning the compensability of Plaintiff's left ankle. Finally, Defendants would not have needed an independent medical examination to address the causation of Plaintiff's left ankle injury if they stipulated to this issue. Thus, based upon the totality of the circumstances, neither the express wording, the location in the Pre-trial Agreement of the alleged stipulation concerning the compensability of Plaintiff's left ankle injury, nor the conduct of the parties both prior to and during the hearing before the Deputy Commissioner evidence an intent to stipulate to the compensability of Plaintiff's left *Page 14 
ankle injury. Outer Banks Contractors, Inc., 302 N.C. 599,276 S.E.2d 375 (1981); Mullican, 95 N.C. App. 27,381 S.E.2d 847 (1989).
4. Pursuant to the terms of the November 19, 2008 Order by Deputy Commissioner Griffin authorizing Defendants' request for an independent medical examination, Defendants' facsimile to Plaintiff on December 11, 2008 was not in compliance with Deputy Commissioner Griffin's November 19, 2008 Order that the independent medical examination be scheduled "within 3 weeks from the date of this order." Plaintiff did not violate Deputy Commissioner Griffin's Order by refusing to cancel his January 9, 2009 right total knee replacement surgery, and he is not barred from receiving medical compensation in connection with the same. N.C. Gen. Stat. §§ 97-25; 97-27(a); 97-78(f); 97-78(g) (2008); Watkins v.City of Wilmington, 290 N.C. 276, 225 S.E.2d 577 (1976).
5. As a result of Plaintiff's November 19, 2006 work injury, he sustained a left ankle injury, which materially aggravated his pre-existing, non-disabling right knee arthritis, requiring a right total knee replacement surgery. N.C. Gen. Stat. § 97-2(6) (2008);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000).
6. As a result of Plaintiff's November 19, 2006 work injury, Plaintiff is entitled to temporary total disability compensation at the rate of $471.34 per week from December 6, 2006 through the present and continuing until further Order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29 (2008); Russell v.Lowes Prod. Distribution, 108 N.C. App. 762 (1993). *Page 15 
7. As a result of Plaintiff's November 19, 2006 work injury, Plaintiff is entitled to have Defendants pay for all medical treatment reasonably related to his work injury. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $730.00 per week from November 21, 2006 and continuing until further Order of the North Carolina Industrial Commission. Any accrued compensation shall be paid in a lump sum. Defendants are allowed a credit for compensation already paid.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's November 19, 2006 work injury, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of the accrued compensation owed to Plaintiff and every fourth check thereafter.
4. Defendants shall pay the costs of these proceedings.
This the ___ day of December 2009. *Page 16 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ DANNY LEE McDONALD COMMISSIONER
 S/_______________ STACI T. MEYER COMMISSIONER *Page 1